[Civ. No. 38258. First Dist., Div. One. Jan. 25, 1977.]

K. B. MAHDAVI, Plaintiff and Appellant, v.
FAIR EMPLOYMENT PRACTICE COMMISSION,
Defendant and Respondent.

## Counsel

Gabriel M. Gesmer, Nancy C. Lenvin and Thomas W. Pulliam, Jr., for Plaintiff and Appellant.

Melvin L. Kennedy and Susan Spurlark as Amici Curiae on behalf of Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and John C. Porter, Deputy Attorney General, for Defendant and Respondent.

## Opinion

**WEINBERGER, J.**[*]—This is an appeal from a superior court judgment denying appellant's petition for a peremptory writ of mandate and

---

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

discharging the alternative writ issued. The petition was filed purportedly "pursuant to Code of Civil Procedure § 1094.5" and claimed that "respondent committed prejudicial abuses of discretion and denied petitioner a fair trial." The abuses of discretion allegedly were (a) that the investigation was done "in such a perfunctory manner that there was effectively no investigation within the meaning of Labor Code §§ 1421 and 1423;" (b) the failure of respondent to "establish rules of practice to govern its procedure and actions in petitioner's case and like cases;" and (c) a failure "to make written findings to support and explain its decision." The only evidence presented to the superior court was the administrative record of the respondent. On appeal to this court permission was requested by and granted to the San Francisco Lawyers' Committee for Urban Affairs, and the Employment Law Center to file a brief as amici curiae in support of appellant's position.

The case arises as a result of the dismissal by the California Fair Employment Practice Commission (FEPC) of an employment discrimination claim. On December 4, 1974, appellant Kamal B. Mahdavi filed a complaint with the FEPC, alleging that he had been the victim of discrimination by the University of California at Irvine (University). By letter dated January 17, 1975, appellant was notified that the investigator assigned to the case would recommend that the case be closed "as there is no evidence that you have been discriminated against." FEPC Commissioner Stella Sandoval, on January 31, 1975, wrote to appellant advising him of her decision to close the case and her intention to seek the full commission's ratification of this decision at their March 6, 1975, meeting. She also advised appellant of his right to appeal to the full commission.

Appellant exercised his right to appeal; a hearing was held before a hearing officer on May 8, 1975, and on June 6, 1975, FEPC notified appellant that it had ratified Commissioner Sandoval's decision to close the case. Thereafter the petition for a writ of mandate was filed in the superior court.

### STATEMENT OF FACTS

Appellant lodged his complaint with the FEPC after he failed to receive any response to two applications for administrative positions at the University for which he believed he was qualified. On October 21, 1974, appellant had submitted his resume as an application for employment as assistant to the dean of the University's school of engineering.

On November 20, 1974, he submitted a second application to the University for the position of student activities coordinator.

In his complaint, filed December 4, 1974, appellant stated that he had been discriminated against because of his "national origin" and that he believed he had not received a response because he is not a United States citizen. Appellant was born in Iran and is a permanent resident of the United States.

Consultant Kay Kirkland was assigned by the FEPC to investigate the matter. She met with the University's affirmative action officer, personnel manager and assistant personnel manager and concluded that appellant's fears of discrimination were both unfounded and premature. Both positions were still open and appellant was a contender. As she explained in her letter to appellant dated January 17, 1975, "The position of Assistant Dean in the Engineering Department drew hundreds of Applications, which have been referred to the Department. At this time, the Dean has not narrowed down the number of applications, nor determined which applicants will be interviewed. [¶] The Coordinator's position drew 400 applications, which will be reduced to approximately 25 for interview. An ethnically balanced committee composed of faculty, staff, and students are [sic] presently screening those applications." She further stated that the University has no policy of excluding noncitizens, and that resident aliens are, in fact, employed at the faculty and staff levels. The investigator, therefore, concluded that the case should be closed for lack of evidence of discrimination, but did recommend to the University personnel department that a method be devised to inform applicants of the status of their applications in order to avoid future misunderstandings.

On February 7, 1975, appellant wrote to Commissioner Sandoval requesting that his case be kept open. He argued that the delay in filling the positions should be construed as evidence of discrimination, and added that he had filed applications at other University of California campuses in the past and had received no response. By letter dated February 21, 1975, appellant reaffirmed his desire to keep the case open and enclosed a letter from the University advising him that he had not been selected for interview for the student activities coordinator position.[1]

---

[1]The letter advised him that his application had been referred to the personnel office for consideration for future openings at the campus. Appellant also did not receive appointment to the position of assistant to the dean of the school of engineering, although the record is silent as to how and when he received this information.

At the hearing on appellant's appeal held May 8, 1975, no verbatim record was kept by the hearing officer. When the FEPC notified appellant that it had ratified Commissioner Sandoval's earlier decision to close his case, the letter of notification contained no findings or reasons for the decision. The FEPC concedes that no formal findings were ever made. The trial court, after reviewing the FEPC record and considering the briefs and arguments of counsel, concluded that findings of fact were not necessary, there being no disputed facts but only questions of law. This appeal followed entry of judgment against appellant.

## DISCUSSION

The California Fair Employment Practice Act, enacted in 1959 (Lab. Code, §§ 1410-1433), is a comprehensive police power measure prohibiting discrimination in employment. The act provides essentially for investigation by the FEPC on its own motion or in response to a complaint.

Any person aggrieved by an unlawful employment practice, or the Attorney General, may file a verified *complaint.* (Lab. Code, § 1422.) When its investigation warrants it the FEPC issues and serves a written *accusation* with a copy of the complaint and requires the respondent to answer the charges. (Lab. Code, § 1423.)

■ The complainant does not have a right to a hearing on his charges; "the allegations in a complaint serve no purpose other than to get an investigation in motion." (*Marshall* v. *Fair Employment Practice Com.* (1971) 21 Cal.App.3d 680, 684 [98 Cal.Rptr. 698].)

Hearings on formal accusations by the FEPC are conducted in accordance with the Administrative Procedure Act. (Lab. Code, § 1424; see 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, §§ 426-430, pp. 3723-3728.)

By the terms of Code of Civil Procedure section 1094.5, subdivision (a), administrative mandamus does not apply unless the final administrative order or decision reviewed was "made as the result of a proceeding in which *by law a hearing is required to be given,* evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer, . . ." (Italics added.) ■ As stated in *Temescal Water Co.* v. *Dept. Public Works* (1955) 44 Cal.2d 90 at page 101 [280 P.2d 1], "The decisive question is whether

the agency exercises an adjudicatory function in considering facts presented in an administrative hearing." It is appellant's theory that review pursuant to section 1094.5 applies to a denial by the FEPC of a complainant's appeal of the dismissal of his complaint. He therefore concludes that the FEPC must issue formal findings in support of its decision. (See *City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768, 778-779 [122 Cal.Rptr. 543, 537 P.2d 375]; *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 12].)

■ California Administrative Code, title 8, section 303, subdivision (e), provides. that, as regards appeal to the full commission: "If such appeal is made, the commission shall review the entire file, and *may, in its discretion, hear the parties.*" (Italics added.) From the plain language of the section it is clear that an appellate hearing is *not* required following the dismissal of a complaint. The fair meaning of section 303, subdivision (e), instead, is that the commission is empowered to determine, by an informal review of the file, whether dismissal of the complaint was justified, and to hold a hearing if deemed necessary or desirable for the making of such determination.

The mandatory review of the file should not be treated as a hearing within the meaning of Code of Civil Procedure section 1094.5. To so construe section 303, subdivision (e) (Cal. Admin. Code, tit. 8) reduces to mere surplusage the language that the commission "may, in its discretion, hear the parties." Such a construction should be avoided. (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 480 [82 Cal.Rptr. 724, 462 P.2d 580].) ■ It is a well established rule of statutory construction that every word, phrase or provision is presumed to have been intended to have a meaning and perform a useful function. (*Read* v. *Rahm* (1884) 65 Cal. 343 [4 P. 111]; *Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 233 [273 P.2d 5].)

Appellant relies upon cases holding that a hearing within the meaning of Code of Civil Procedure section 1094.5 may be a purely documentary proceeding. (*California Optometric Assn.* v. *Lackner* (1976) 60 Cal.App.3d 500 [131 Cal.Rptr. 744]; see *Winkelman* v. *City of Tiburon* (1973) 32 Cal.App.3d 834, 840 [108 Cal.Rptr. 415]; *Poschman* v. *Dumke* (1973) 31 Cal.App.3d 932, 938 [107 Cal.Rptr. 596]; *People* v. *Ivenditti* (1969) 276 Cal.App.2d 178, 180 [80 Cal.Rptr. 761].) This reliance is misplaced. The issue in the present case is not whether a section 1094.5 hearing may properly be had on documents alone, but whether section

1094.5 applies at all. Likewise inapplicable are cases cited by appellant supporting the proposition that formal findings are required in every . proceeding reviewable under section 1094.5. (*City of Fairfield* v. *Superior Court, supra,* 14 Cal.3d 768; *Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506.)

Appellant contends in a further effort to make applicable the provision of Code of Civil Procedure section 1094.5 that formal findings of fact are essential to a meaningful judicial review of a decision to dismiss following a section 303, subdivision (e) appeal (Cal. Admin. Code, tit. 8) and thus are implicitly required by Labor Code section 1428 which provides that "Every final order or decision of the commission is subject to judicial review in accordance with the law." The Labor Code section, however, does not specify *what law* will govern judicial review of final decisions and orders of the FEPC. ▮ Inasmuch as there is no requirement of a hearing for a section 303, subdivision (e) appeal, Labor Code section 1428 must be construed as requiring review of dismissals pursuant to Code of Civil Procedure section 1085 rather than Code of Civil Procedure section 1094.5. Meaningful judicial review of a dismissal does not require formal findings of fact, provided the court has an adequate record from which it can determine whether the agency's action was arbitrary, capricious or an abuse of discretion. (Cf. *Klein* v. *Fair Employment Practices Commission* (1975) 31 Ill.App.3d 473 [334 N.E.2d 370, 376].) ▮ In the present case, the complete administrative record, including the investigator's report and a letter to petitioner summarizing the results of the investigation, was filed in the superior court. Formal findings of fact which merely restate the investigator's report could not assist the trial court nor this court in determining whether the dismissal was proper.

Amici curiae request us to take judicial notice of a mass of statistics which show that a large number of complaints "are dismissed for insufficient evidence or no evidence of discrimination." They claim that this indicates that the FEPC is submitting to powerful economic forces, which can only be overcome by a requirement of formal findings in support of a dismissal. Assuming that these statistics are a proper subject for judicial notice, amici's contention cannot be sustained. Similar statistics were provided to the court in *Marshall* v. *Fair Employment Practice Com., supra,* 21 Cal.App.3d 680 at pages 685-686, and similar invidious implications urged. The court there observed: "Just what conclusion we are to draw from the figures submitted, we do not really know. Perhaps a majority of complaints really have no validity. Perhaps

the commission operates on a tight budget, which does not permit full scale prosecution of any but the most promising cases. Perhaps the commission, in order to maintain its effectiveness, does not want to prosecute marginal cases which offer a negligible chance of success. If that is so, surely it is a discretionary administrative decision with which we have no right to interfere as long as there is no violation of the legislative mandate."

We now consider the appellant's contention that, although he petitioned in the court below for administrative mandamus, it was the court's duty to issue a traditional writ of mandate pursuant to Code of Civil Procedure section 1085 upon a showing that the FEPC failed to perform an act which the law specially enjoins. Section 1085 provides that a writ of mandamus "may be issued by any court . . . to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; . . ." Appellant argues that the FEPC defaulted in its mandatory duties (1) to make a "genuine" investigation of his complaint, and (2) to issue comprehensive rules and regulations governing procedures in making investigations. He urges that the trial court erred in failing to issue a section 1085 writ of mandate to compel performance of these duties. Respondent argues that while appellant correctly sets forth the requirements for a section 1085 writ of mandate, he fails to satisfy them.

■ California has entirely rejected the doctrine of "the theory of the pleading." (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 301, p. 1974.) "We are not concerned with technical questions as to the proper *designation* of an action. It is for us to determine whether the complaint states *any* cause of action entitling the plaintiff to *any* relief at law or in equity." (*Hayden* v. *Collins* (1905) 1 Cal.App. 259, 261 [81 P. 1120].) Thus, in the instant case, it was the court's duty to issue a traditional writ of mandate if warranted by the facts.

Labor Code section 1423 authorizes the FEPC to make an investigation "of any complaint alleging facts sufficient to constitute a violation of any of the provisions of Section 1420." We note at the outset that it is not certain that appellant actually alleged "facts sufficient to constitute a violation" of the Fair Employment Practice Act. Although his complaint alleged discrimination based on national origin, appellant's statement of facts indicates that he believed the discrimination was instead based on alienage. The distinction between "national origin" and alienage was

made by the United States Supreme Court in *Espinoza* v. *Farah Mfg. Co.* (1973) 414 U.S. 86 [38 L.Ed.2d 287, 94 S.Ct. 334]. There the Equal Employment Opportunity Commission (EEOC), the federal counterpart to the FEPC, had been provided with statutory authority to process complaints alleging discrimination based on, inter alia, national origin. Authority was not granted for complaints based on alienage. The EEOC issued an interpretive guideline providing that a lawful alien resident may not be discriminated against on the basis of citizenship. (*Id.,* at p. 92 [38 L.Ed.2d at p. 293].) The claimant Espinoza was a Mexican alien who was refused employment on the basis of a company policy against the employment of aliens by a firm whose employees were 96 percent of Mexican ancestry. The Supreme Court held that the term "national origin" was not intended by Congress to embrace citizenship requirements. (*Id.,* at p. 88 [38 L.Ed.2d at p. 291].) This decision was based on legislative history and the longstanding practice of requiring federal employees to be United States citizens. (See also, *id.,* at p. 88, fn. 2 [38 L.Ed.2d at p. 291], referring to several state statutes which have made similar distinctions.)

Assuming without deciding that the commission had jurisdiction, it is apparent that the FEPC fulfilled its obligation to investigate appellant's complaint. Appellant does not contend that the commission refused to investigate, but rather that it failed to make a "genuine" investigation. Appellant urges that the FEPC investigation, which consisted of recording the "self-serving claims" of the University, is inadequate in light of extensive discovery powers granted to the commission under Labor Code section 1419, subdivision (g) "To hold hearings, subpoena witnesses, compel their attendance, administer oaths, examine any person under oath and, in connection therewith, to require the production of any books or papers relating to any matter under investigation or in question before the commission." Appellant therefore concludes that a writ of mandate under Code of Civil Procedure section 1085 should issue to compel a genuine investigation of appellant's case.

The nature and scope of an employment discrimination investigation lies within the discretion of the FEPC. It is the general rule that mandamus does not lie to compel a public administrative agency possessing discretionary power to act in a particular manner. "The court in response to appropriate application may compel such agency to act, but it may not substitute its discretion for the discretion properly vested in the administrative agency." (*Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 315 [144 P.2d 4]; see also *City & County of S. F.* v.

*Superior Court* (1959) 53 Cal.2d 236, 244 [1 Cal.Rptr. 158, 347 P.2d 294]; *Larson* v. *City of Redondo Beach* (1972) 27 Cal.App.3d 332, 337 [103 Cal.Rptr. 592]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 75, p. 3851.) However, a writ of mandate will issue to control a flagrant abuse of discretion or arbitrary disregard of the law. (*McLeod* v. *Board of Pension Commissioners* (1970) 14 Cal.App.3d 23, 27 [94 Cal.Rptr. 58]; see 5 Witkin, *supra,* § 77, pp. 3853-3854.)

No arbitrary abuse of discretion has been shown here. While a more complete investigation was possible, the commission's decision to close the case on the facts found is well within its discretion. The investigation made supports the discretionary decision to proceed no further. In *Marshall* v. *Fair Employment Practice Com., supra,* 21 Cal.App.3d 680 at page 685, the court rejected a similar allegation of incomplete investigation, declaring: "While the commission investigation may not have been the most complete imaginable, . . . the decision to drop the matter was well within the limits of the discretion which the Legislature granted the commission." The trial court's refusal in the instant case to compel further investigation was proper.

Appellant contends that a writ of mandate under Code of Civil Procedure section 1085 should have issued to compel the FEPC to establish regulations governing investigative procedure. He argues that Labor Code section 1427 requires the commission to issue regulations concerning the method, duration and intensity of an investigation, rather than leaving such variables to the "whim" of FEPC employees.[2] A more appropriate word for "whim" would appear to be *"discretion."*

Traditionally administrative agencies have enjoyed wide latitude in the exercise of their rulemaking powers. Courts have limited review to a determination of whether the agency reasonably interpreted the legislative mandate in promulgating a specific administrative regulation. The principles governing judicial review of administrative regulations were recently summarized by the Supreme Court in *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 411, 412 [128 Cal.Rptr. 183, 546 P.2d 687], as follows: "First, our task is to inquire into the legality of the challenged regulation, not its wisdom. (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 737 [63 Cal.Rptr. 689, 433 P.2d 697].) Second, in reviewing the legality of a regulation adopted pursuant to a

---

[2]Labor Code section 1427 provides: "The commission shall establish rules of practice not inconsistent with law to govern the foregoing procedure and its own actions thereunder." (See Lab. Code, § 1423.)

delegation of legislative power, the judicial function is limited to determining whether the regulation (1) is 'within the scope of the authority conferred' (Gov. Code, § 11373) and (2) is 'reasonably necessary to effectuate the purpose of the statute' (Gov. Code, § 11374). Moreover, 'these issues do not present a matter for the independent judgment of an appellate tribunal; rather, both come to this court freighted with the strong presumption of regularity accorded administrative rules and regulations.' (*Ralphs Grocery Co.* v. *Reimel* (1968) 69 Cal.2d 172, 175 [70 Cal.Rptr. 407, 444 P.2d 79].) And in considering whether the regulation is 'reasonably necessary' under the foregoing standards, the court will defer to the agency's expertise and will not 'superimpose its own policy judgment upon the agency in the absence of an arbitrary and capricious decision.' (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 832 [27 Cal.Rptr. 19, 377 P.2d 83].)"

■ Although the judicial policy of noninterference has thus far been limited to cases dealing with whether a rule *exceeds* statutory authority, it is equally applicable where, as here, the issue is whether an administrative regulation is sufficiently comprehensive. Courts have been reluctant to impose on agencies requirements which would have the effect of controlling allocation of agency resources. To require by court order the promulgation of rules mandating in-depth investigation of every complaint filed with the FEPC would constitute judicial usurpation of the commission's discretion as to how best to allocate its funds, and may well result, as respondent contends, in a decrease of funds available for serious hearings and litigation.

■ Amici urge that the due process clause of the United States Constitution requires findings of fact in the denial of a section 303, subdivision (e) appeal (Cal. Admin. Code, tit. 8) in order to prevent arbitrary dismissal of a valid complaint. They rely upon a series of cases holding that whenever governmental action deprives an individual of property or personal rights, it must do so in accordance with due process of law. This is similar to the argument raised in *Marshall* v. *Fair Employment Practice Com., supra,* 21 Cal.App.3d 680 at page 685, where the petitioner contended that due process requires the issuance of an accusation and a formal hearing because his complaint alleged facts which, if true, constituted an unfair employment practice. Rejecting that argument, the court declared: "The constitutional argument advanced by petitioner relies solely on *Goldberg* v. *Kelly,* 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011], and *Caulder* v. *Durham Housing Authority,* 433 F.2d 998. Neither case is in point. *Goldberg* deals with the constitutional right

to a hearing before the termination of welfare benefits; *Caulder* tackles the same problem in connection with evictions from public housing projects. Both simply hold that state deprivals of state conferred benefits must, in those situations, be preceded by hearings held in conformity to rudimentary due process notions. *In the case at bar the state has not deprived petitioner of anything. It has merely refused to act affirmatively. The availability of judicial relief in a proper case seems adequate protection against arbitrary actions by the commission.*" (Italics added.)

The same rationale disposes of other cases cited by amici. In *Fuentes* v. *Shevin* (1972) 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983], the Supreme Court held that a debtor has a due process right to hearing prior to seizure of his property on a writ of replevin. *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593], held that revocation of parole constitutes a deprivation of liberty within the meaning of the due process clause. The Supreme Court held in *Anti-Fascist Committee* v. *McGrath* (1951) 341 U.S. 123 [95 L.Ed. 817, 71 S.Ct. 624], that due process requires notice and hearing before an organization could be listed as communistic or subversive. The California Supreme Court similarly held in *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 206 [124 Cal.Rptr. 14, 539 P.2d 774], that the California statutory scheme regulating civil service employment confers upon an individual who achieves the status of "permanent employee" a property interest in the continuation of employment which is protected by due process.

Appellant contends that the evidence in the record is insufficient as a matter of law to support the commission's decision to dismiss his complaint since it was based upon uncorroborated self-serving statements by University employees. This contention is without merit. ▪ Determinations of fact by an administrative agency must be sustained if supported by substantial evidence. Under the substantial evidence rule the court may not isolate only evidence which supports the administrative finding and disregard other relevant evidence in the record. (*Northern Inyo Hosp.* v. *Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14, 24 [112 Cal.Rptr. 872].) On the other hand, where proof permits an inference either way, neither the appellate nor the trial court may disregard or overturn the commission's finding " 'for the reason that it is considered that a contrary finding would have been equally or more reasonable.' " (*Boreta Enterprises, Inc.* v. *Department of Alcoholic Beverage Control* (1970) 2 Cal.3d 85, 94 [84 Cal.Rptr. 113, 465 P.2d 1]; *Northern Inyo Hosp.* v. *Fair Emp. Practice Com., supra.*)

A review of the entire record reveals that the appellant has no evidence to support his allegation of discriminatory hiring practices at the University. Appellant based his claim of discrimination solely upon the University's failure to respond to his applications and the delay in filling the positions. In light of the investigator's finding that appellant was still a contender for the positions and that noncitizens were numbered among the University faculty and staff, the commission's decision to dismiss for lack of evidence was reasonable.

Appellant, throughout these proceedings, has based his claim of discrimination on the fact he is an alien. On the first complaint form provided by the commission he also checked a box describing his discrimination as one of "national origin." The difference is crucial and jurisdictional. The Legislature authorized the commission to investigate and act upon specified types of discrimination. National origin or ancestry is among them. Alienage is not. Although the Legislature has authorized action on new types of discrimination from time to time (age, physical handicap, medical condition, etc. (Lab. Code, § 1420)), it has not authorized the commission to utilize its machinery for processing claims of discrimination based on alien status.

Respondent does not claim a total lack of jurisdiction because petitioner did check the box marked "national origin," a proper and jurisdictional basis of complaint, and the commission treated the matter as within its jurisdiction and proceeded to act upon it. The staff acting upon the complaint did not consider the jurisdictional difference between "national origin" and "alienage." Despite the fact that the jurisdictional question was not raised in nor decided by either the commission or the trial court, respondent asks this court to make a distinction in its opinion between discrimination based upon alien status and national origin "so that the Commission may handle the two types of cases differently in future cases." We prefer not to decide an issue that has not been fully briefed by the parties and is not properly before us. It would appear, however, that the decision in *Espinoza* v. *Farah Mfg. Co.*, *supra*, 414 U.S. 86, to the effect that Congress, in using the term "national origin," did not intend to include alienage would compel a similar conclusion as regards the Legislature's use of the same term.

Appellant suggests that *Marshall* v. *Fair Employment Practice Com.*, *supra*, 21 Cal.App.3d 680, to which we have made frequent reference, may no longer state the law in view of *Dunlop* v. *Bachowski* (1975) 421 U.S. 560 [44 L.Ed.2d 377, 95 S.Ct. 1851], *Bachowski* v. *Brennan* (3d Cir.

1974) 502 F.2d 79, and *Adams* v. *Richardson* (D.C.Cir. 1973) 480 F.2d 1159 [156 App.D.C. 267]. These cases establish the proposition that under federal law an administrative agency does not enjoy unreviewable discretion. There is no question in the instant case about the right to judicial review of every final order or decision of the FEPC. (Lab. Code, § 1428.) Nothing in the cited cases suggests any reason why the *Marshall* rationale is not applicable to the case at bench.

The judgment is affirmed.

Sims, Acting P. J., and Elkington, J., concurred.