[Civ. No. 59632. Second Dist., Div. Four. Apr. 20, 1981.]

MOTORS INSURANCE CORPORATION, Plaintiff and Appellant, v.
DIVISION OF FAIR EMPLOYMENT PRACTICES et al.,
Defendants and Respondents;
CONSTANCE CRAIG, Real Party in Interest and Respondent.

[Civ. No. 59025. Second Dist., Div. Four. Apr. 20, 1981.]

GENERAL MOTORS CORPORATION, Plaintiff and Appellant, v.
DIVISION OF FAIR EMPLOYMENT PRACTICES et al.,
Defendants and Respondents;
RONNIE MADSON, Real Party in Interest and Respondent.

212

COUNSEL

Pepper, Hamilton & Scheetz and Russell J. Thomas, Jr., for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Arthur C. de Goede, Assistant Attorney General, and David S. Chaney, Deputy Attorney General, for Defendants and Respondents.

No appearance for Real Parties in Interest and Respondents.

OPINION

WOODS, J.—This is an appeal from final judgments entered by the Superior Court of Los Angeles denying issuance of peremptory writs of prohibition and/or mandate against the California Division of Fair Employment Practices (hereinafter referred to as the Division) and the California Fair Employment Practice Commission (hereinafter referred to as the Commission).

In each of these cases the appellants sought a writ of mandate to restrain the Division and the Commission from proceeding on an accusation (complaint) issued pursuant to Labor Code section 1422.2, subdivision (a).[1] The writs were sought based on appellants' contention that the Commission lacked jurisdiction to hear issues raised in the accusation because the Division failed to comply with all of the conditions precedent to the issuance of an accusation. Final judgment denying the relief sought was entered on September 25, 1979, and the matters were thereafter consolidated on appeal.

---

[1] Labor Code sections 1410 to 1433 (Fair Employment Practices Act) were repealed by the Legislature in 1980, and the act now appears at Government Code section 12900 et seq.

The issues presented are: (1) whether a writ of mandate is the legally appropriate remedy by which to attack the allegedly premature issuance of an accusation by the Division of Fair Employment Practices; (2) whether respondents' failure to cross-appeal from the denial of the motion to quash the alternative writ bars them from challenging that ruling before this court; (3) and whether the California Division of Fair Employment Practices must meet the federal standard of compliance with the procedural requirements as set forth in Labor Code section 1422.2, subdivision (a), making them conditions precedent to the issuance of an accusation.

I

On January 17, 1978, Constance Craig filed a complaint with the Division alleging that she had been discriminated against on the basis of her sex in violation of Fair Employment Practices Act, Labor Code section 1410 et seq.

After a determination by the Division that the complaint was prima facie valid, a copy of the complaint was served upon appellant. Thereafter, a representative of the Division conducted an investigation and was permitted to examine certain documents and interview certain agents of the company. The complaint was amended to allege discrimination on a class-wide basis.

The Division attempted conciliation as reflected in the notice of filing of the discrimination complaint and other overtures made by the Division toward informal settlement of the matter. Various subpoenas were issued by the Division, but the Division made no effort to enforce these subpoenas until after the accusation against appellant was issued on January 17, 1979.

In its accusation, the Division charged appellant with a violation of Labor Code section 1420, subdivision (a) by failing to transfer and promote complainant because of her sex. Item 4 of the accusation stated: "The Division of Fair Employment Practices has complied with all procedural requirements of the Fair Employment Practice Act."

An alternative writ seeking to restrain the Division and the Commission from proceeding to hearing on the accusation was granted by the superior court, but the appellant was directed to make a motion before the Commission regarding whether the Commission had jurisdiction to

proceed. The Commission denied appellant's motion to dismiss the accusation.

Thereafter, a motion to quash the alternative writ and the petition for writ were heard by the superior court. The motion to quash the alternative writ was overruled and appellant's prayer for issuance of a peremptory writ was denied. A final judgment was entered; findings of fact and conclusions of law were not requested.

In the companion case, Ronnie Madson, an employee of the Santa Fe Springs facility of General Motors Corporation, filed a complaint with the Division on May 22, 1978, alleging that he had been discriminated against on the basis of his race. The pertinent facts essentially parallel those which we have recited in the case involving Constance Craig. However, in the case of Ronnie Madson, the Division issued an accusation against the appellant on May 22, 1979, and did not serve it until June 4, 1979. The appellant cites the failure to serve this accusation within one year as an additional procedural violation by the Division.

## II

██ It is the contention of respondents that, since the promulgation of Code of Civil Procedure section 1094.5, the courts have uniformly held that traditional mandamus, as sought by the appellants herein, is not the appropriate method to review adjudicatory administrative action. An administrative agency exercises adjudicatory functions when a hearing is required by law to be given, evidence is required to be taken and the agency is vested with discretion in the determination of facts. (*Wilson* v. *Hidden Valley Mun. Water Dist.* (1967) 256 Cal.App.2d 271, 276 [63 Cal.Rptr. 889].)

It is respondents' position that administrative mandamus, as prescribed in Code of Civil Procedure section 1094.5, is the only proper remedy in the case before us in that Labor Code section 1424 specifically requires the Commission to hold hearings on all issues raised in an accusation issued pursuant to Labor Code section 1422.2. Respondents' contention is erroneous.

Code of Civil Procedure section 1094.5, by its language, only applies where the decision or order sought to be reviewed is the result of a proceeding in which by law (1) a hearing is required to be given, (2) evidence is required to be taken, and (3) determination of the facts is

vested in the inferior tribunal or board. (*Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 601 [45 Cal.Rptr. 512].) Labor Code section 1422.2 provides that the Division shall conduct an investigation of any complaint and attempt to bring about a settlement or conciliation, where possible. If at the end of a year the practice has not been eliminated, the accusation may be filed. There is no provision for holding a hearing or taking evidence by the Division and there is therefore no basis for restricting appellant's remedy to administrative mandamus.

Respondents' argument that Code of Civil Procedure section 1094.5 applies because the *Commission* is required to hold a hearing under Labor Code section 1424 is fallacious, in that the writs are clearly taken from the decision of the Division and not the action of the Commission.

The trial court was correct in its determination that ordinary mandamus, under Code of Civil Procedure section 1085, would lie to compel the performance of a ministerial duty by an administrative entity. ■ The record clearly reflects that this was the basis on which the court denied respondents' motion to quash the writs of mandamus. "I am going to deny the motion to quash, because I believe for the reasons I indicated previously that these writs, or at least one of them, would be appropriate if in fact there had been a clear noncompliance with a condition precedent, and I think that 1085 mandamus would lie. [¶] I think that there would be a lack of subject matter jurisdiction; that dismissal would be a ministerial act . . . ."

■ Appellants challenge the propriety of this court addressing the denial of the motion to quash the writs on the ground that the respondents failed to cross-appeal from the denial of the motion. As discussed in *Joerger* v. *Superior Court* (1934) 2 Cal.App.2d 360 [37 P.2d 1084], a motion to quash a writ of mandamus is the equivalent of a demurrer. ■ "'Since the issuing of an alternative *mandamus* upon an *ex parte* application is not at all conclusive upon the real merits of the controversy or the sufficiency of the application, it follows that the respondent should be allowed an opportunity of testing the sufficiency of the alternative writ, or of the application therefor, before being compelled to make return. Such an opportunity is usually afforded by a motion to quash the alternative *mandamus*, which may be grounded either upon defects in substance or in form. The motion to quash in *mandamus* cases performs the functions of a demurrer to a declaration in an ordinary action at common law, and it is regarded as the appro-

priate means of testing the sufficiency of the application.'" (*Id.*, at p. 364.)

█ It is true that the general rule on appeal is that errors affecting the nonappealing party will not be reviewed. However, the cases abound with exceptions where the court found it appropriate to review an intermediate ruling, proceeding, order or decision, and additional authority for this review is found in Code of Civil Procedure section 906.[2]

### III

█ Appellants urge us to reverse the trial court's decision denying its writ of mandate, which sought to compel the dismissal of the accusation (complaint) filed by the Division with the Commission under Labor Code section 1422.2, subdivision (a).

The contention is that, although the Fair Employment Practices Act was enacted in 1959, prior to the federal legislation,[3] the acts are "virtually identical" antidiscrimination statutes and that the federal procedural requirements and the cases interpreting the federal statute should be applied by this court to the state act.

---

[2]Code of Civil Procedure section 906 provides: "Upon an appeal pursuant to section 904.1 or 904.2, the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the right of a party, including, on any appeal from the judgment, any order on motion for a new trial, and may affirm, reverse or modify any judgment or order appealed from and may direct the proper judgment or order to be entered, and may, if necessary or proper, direct a new trial or further proceedings to be had. The respondent, or party in whose favor the judgment was given, may, without appealing from such judgment, request the reviewing court to and it may review any of the foregoing matters for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken. The provisions of this section do not authorize the reviewing court to review any decision or order from which an appeal might have been taken."

[3]Title VII of the Civil Rights Act of 1964, 42 United States Code section 2000(e) et seq., made it an unlawful employment practice for any employer "to discriminate against any individual because of his race, color, religion, sex or national origin . . . ." To implement the purpose and policy of title VII, Congress created the Equal Employment Opportunities Commission (EEOC) which under the 1972 amendment is empowered to (1) receive charges filed by aggrieved persons alleging unlawful employment discrimination; (2) serve a notice of the charge upon the employer; (3) investigate charges that had been filed and served; (4) determine whether or not "reasonable cause" existed to believe that the charge was true or valid, and if so, (5) endeavor to eliminate the practice by conference, conciliation and persuasion, and if successful to commence an action in the United States District Court.

The case at bar presents a question of first impression. There are no California decisions which address what steps must be taken by the Division to process a complaint through to the issuance of an accusation.

The California Fair Employment Practices Act, as amended in 1977,[4] provided as follows:

Labor Code section 1422: "After the filing of any complaint alleging facts sufficient to constitute a violation of any of the provisions of section 1420 or 1420.1, the division shall make prompt investigation in connection therewith. If the division determines after investigation that the complaint is valid, the division shall immediately endeavor to eliminate the unlawful employment practice complained of by conference, conciliation and persuasion...."

Labor Code section 1422.2: "(a) In the case of failure to eliminate an unlawful practice under this part through conference, conciliation or persuasion, or in advance thereof if circumstances warrant, the chief in his or her discretion may cause to be issued in the name of the division a written accusation. The accusation shall contain the name of the person, employer, labor organization or employment agency accused, which shall be known as the respondent, shall set forth the nature of the charges, shall be served upon the respondent together with a copy of the verified complaint, as amended, and shall require the respondent to answer the charges at a hearing. An accusation shall be issued, if at all, within one year after the filing of a complaint...."

Appellants allege that, in each of the cases before us after the complaint was filed, the Division took virtually no action to investigate the allegations contained therein and, without having determined the complaint to be valid or invalid, the Division proceeded to issue an accusation exactly one year from the date on which the complaint was filed. It is contended that by so doing the Division bypassed at least two steps in the procedures set out in the statute: (1) it failed to make any determination that the complaint was valid, and (2) it failed to engage in efforts at conference, conciliation and/or persuasion.

Appellants cite us to numerous federal cases in which it has been held that if an agency bypasses any of the steps enumerated in the fed-

---

[4]Prior to 1977, the act was administered exclusively by the Commission; the Division became a separate entity by virtue of the amendment. The one-year time limitation for filing of the accusation was also added at this time.

eral statute for the processing of a particular complaint, the agency loses jurisdiction to proceed with the matter to litigation. *Patterson* v. *American Tobacco Co.* (4th Cir. 1976) 535 F.2d 257, is typical of these cases. After setting out the four preliminary steps required under title VII before legal action·can be instituted, the *Patterson* court went on to say: "This provision of the Act has been construed to create an express condition on the commission's power to sue. Consequently, a suit brought by the commission before attempting conciliation is premature." (*Id.*, at p. 272.)

Appellants urge that this standard should be applied in Califo.·nia, that the efforts made toward conciliation by the Division in the cases before the court do not meet this federal standard, and therefore the accusations issued are void and subject to dismissal.

In response, respondents apprise us of the historical differences between the state and federal statutes. We are reminded that the State Fair Employment Practices Act has always provided for resolution of complaints by administrative hearings as well as by conciliation. (See Stats. 1959, ch. 121.) In contrast, initially the sole means by which EEOC could process complaints of discrimination was by conciliation. We are told that this explains the emphasis of the federal court on the requirement that attempts at conciliation be exhausted before litigation is commenced. The respondents allege that when EEOC was given authority to file complaints of discrimination in the federal courts it was contemplated that the Commission would continue to make every effort to conciliate as was required by existing law and only if conciliation proved impossible was the Commission to bring action to the federal district court to seek enforcement.

We find persuasive respondents' argument that there is a philosophical difference between the state and. federal systems with regard to instituting litigation.

Appellants also direct our attention to the Ohio Civil Rights Act, a statute "virtually identical" to the California act, including the one-year limitation within which to file an accusation. Again appellants urge us that where, as here, there is no California case directly in point, foreign decisions involving similar statutes and similar factual situations will be

of great value to the California courts. It is suggested that we should follow the guidance of the Ohio Supreme Court which relied on federal decisions interpreting title VII to conclude in *State* ex rel. *Republic St. Corp.* v. *Ohio Civ. Rts. Com'n* (1975) 44 Ohio St.2d 178 [73 Ohio Ops.2d 478, 339 N.E.2d 658], that efforts to resolve alleged discriminatory practices by conciliation were a jurisdictional prerequisite to the proper issuance of a complaint by the Ohio Civil Rights Commission.

We agree that foreign decisions involving similar statutes and similar fact situations are of great value to California courts. We have been known to blatantly plagiarize a phrase well turned in distant places. We do not feel compelled, however, to adopt the procedural pronouncements of foreign jurisdictions.

Our courts while looking to federal decisions have frequently held that rights guaranteed by the California Constitution are not dependent upon those guaranteed by the United States Constitution. (*Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458 [156 Cal.Rptr. 14, 595 P.2d 592]; *Garfinkle* v. *Superior Court* (1978) 21 Cal.3d 268, 282 [146 Cal.Rptr. 208, 578 P.2d 925].) As cited by appellants, the court acknowledged in *Price* v. *Civil Service Com.* (1980) 26 Cal.3d 257, 276 [161 Cal.Rptr. 475, 604 P.2d 1365], that the United States Supreme Court's interpretation of the antidiscrimination provision of title VII does not necessarily determine the appropriate interpretation of a similar provision of the Fair Employment Practices Act in California. In the *Price* case, the court found the federal cases dealing with affirmative action programs persuasive, but nonetheless made this declaration of our judicial independence.

Appellants err in citing *People* v. *Hallner* (1954) 43 Cal.2d 715 [277 P.2d 393], in support of their contention that legislative intent in a California statute can be garnered from judicial interpretations of a foreign statute. Clearly, the doctrine enunciated in *Hallner* is that legislative intent can be garnered from the California court's interpretation of the relevant statute.

It is argued by appellants that, California having amended its statute in 1977, subsequent to the issuance of these federal decisions, the case at bar falls within the principle that where a statute has been construed by judicial design, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature was aware of the judicial construction and approved of it. We disagree. We find no support for a concept that legislative intent can be determined by the

Legislature's presumed knowledge of judicial interpretation of similar statutes in foreign jurisdictions. Also, much of appellants' contention is based on an imagined radical change in the language of Labor Code section 1422.2 by the 1977 amendment. This is not justified. In 1959 the act required that the then Commission investigate and if warranted employ "conference, conciliation and persuasion" to resolve the complaint. (See Stats. 1959, ch. 121, pp. 2002-2003.)

Having concluded that we are free to interpret the procedural requirements of Labor Code section 1422.2, subdivision (a) without the burden of foreign precedent, we proceed to do so. Appellants state that the Division failed to comply with the first requirement of the act which is that the Division make a prompt investigation of the claim, and after investigation determine that the complaint is valid. Appellants contend that the investigation·was not completed and therefore a determination of the validity of the claim was impossible. The basis for contending that the investigation was not completed is that subpoenas were issued and not pursued prior to the accusation being filed. We find this argument fails for several reasons. First, the Administrative Adjudication Act provides for postaccusation discovery. (Gov. Code, § 11507.6 et seq.) The investigation is obviously intended to be an ongoing process, and a contention that a sufficient investigation had not occurred to warrant a determination that the complaint was valid is not justified.

In addition, the declaration of Carol Schiller, an area administrator of the Division of Fair Employment Practices, was read and considered by the trial judge. It states that the Division has been consistent in the application of its complaint handling procedures. She declared that, when a complaint is filed, the Division, through its consultants, makes an initial inquiry to determine whether sufficient facts have been alleged to constitute a possible violation of the act. If it is determined that the facts alleged are insufficient to constitute a possible violation of the act, the Division rejects the complaint. There was other evidence by way of affidavit that it was the Division's policy to docket complaints only after initially examining and finding the complaint valid and that many complaints were rejected because they failed to meet this test.

Appellants are apparently contending that this does not constitute a genuine investigation. We rely on the opinion of the court in *Mahdavi v. Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326 [136 Cal.Rptr. 421]. In *Mahdavi*, the appellant contended that the Commission failed to make a "genuine" investigation of FEPC claims. An

arbitrary abuse of discretion was claimed. The court stated: "Traditionally administrative agencies have enjoyed wide latitude in the exercise of their rulemaking powers. Courts have limited review to a determination of whether the agency reasonably interpreted the legislative mandate in promulgating a specific administrative regulation." (*Id.*, at p. 338.) The court made it clear that an administrative agency does not enjoy unreviewable discretion, but that an arbitrary abuse of discretion has to be shown for the court to conclude that the requirement of investigation had not been complied with. Appellants have presented no such evidence in this case.

Appellants put before the trial court a letter of the San Francisco Division of the Fair Employment Practice Commission. This letter formally notified the employer that the Division's investigation had been completed, and reported the results of that investigation. Although this may be the better practice, there is no requirement in the code that any formal notice of this type be given to the employer. The trial court was justified in concluding that the requirement of an investigation and a determination of the validity of the complaint, within the Division's understanding of the term, had been met.

## IV

Appellants rely most heavily on their contention that it was a condition precedent to the issuance of the accusation that the Division attempt to eliminate the alleged unlawful practice by conference, conciliation or persuasion, and that it failed to do so. Respondents contend firstly that the Division met its burden in this regard, and, secondly, Labor Code section 1422.2 specifically provides that the accusation may be filed in advance of this requirement as "circumstances warrant." We address the second contention.

Appellants tell us that the language of the "circumstances warranted" clause was a limited exception drafted into the statute to permit the Division to deal expeditiously with cases in which there was an obvious need to issue an accusation immediately upon the filing of a complaint or shortly thereafter, or prior to the commencement of any effort at conciliation. But, appellants say, to permit respondents to rely upon the "circumstances warranted" exception to protect their jurisdiction in this case would defeat the very purpose sought to be achieved by the Legislature in imposing a one-year time limitation on the processing of the complaints by the Division.

Without sharing the basis of their insight, appellants claim that the Division never intended to rely on the "circumstances warranted" clause in this case but now do so as a mere afterthought. This is somehow gleaned from the Division's assertion in the accusation that all conditions precedent had been met. Again, we look to the declaration filed on behalf of the Division and find that some effort had been made toward an amicable resolution of this claim. First, the notice of filing of the discrimination complaint, which was sent by the Division to the appellants and requests a response, says: "You are hereby requested within fourteen (14) calendar days, to respond in detail to all of the allegations in the enclosed complaint and to submit any documentary evidence you may have to support your position." It goes on to say: "If you are at all interested in discussing conciliation of this complaint, we encourage you to contact the assigned consultant immediately to avoid any unnecessary delay and the possible accrual of back pay or other liability. In the event the complaint can be resolved informally to the satisfaction of the Chief of the Division of Fair Employment Practices, submittal of the data may not be necessary." Although this is more in the nature of a threat than an invitation, respondents rely on this correspondence as the first effort on the part of the Division by way of settlement.

We turn next to the declaration of Joan Smiles, a consultant of the Division of Fair Employment Practices, who was assigned to investigate the complaint of Constance Craig. She declares that "[d]uring the course of the investigation I have endeavored to discuss conciliation of the matter with the representatives of Motors Insurance Corporation. These endeavors are documented in my letter of August 5, 1978 to Walter Hinkel, Manager of Motors Insurance Corporation...." The declaration goes on to say: "All such endeavors at conciliation during the investigation were unproductive." This declaration also appears to be on the basis of a single piece of correspondence. It is contended by respondents that some communication with the employer was by telephone and that these calls included efforts toward conciliation or persuasion. We are therefore not in a position on this record to entirely judge either the quantity or quality of effort of the Commission to comply with the statutory requirement that it attempt to confer, conciliate or persuade, but it does appear that the Division was justified in stating that it had met this condition by expending some effort in that regard.

We are then left to determine whether the Legislature intended the "circumstances warranted" clause to be used to protect the Commission from a loss of jurisdiction in those cases where it found itself running

out of investigatory time. Respondents have cited us to several cases where the courts have held that they will not interpret statutory language so as to declare that, through failure to act, the jurisdiction of a commission to make an award would be lost, particularly where there was no fault attributable to the party seeking relief.

In *Liberty Mut. Ins. Co.* v. *Ind. Acc. Com.* (1964) 231 Cal.App.2d 501, 510 [42 Cal.Rptr. 58], the court said: "By the mere inaction of the commission a right would be denied, the aggrieved party being helpless to prevent in any way the complete denial of his right. . . . If the Legislature had intended to work so monstrous a result, it surely ought to have said so by language specifically declaring such intent. It did not do so." The Legislature has mandated that the provisions of the act be liberally construed to accomplish its purposes which are to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, creed, color, natural origin, ancestry, physical handicap, medical condition, marital status, sex, or age. (Former Lab. Code, §§ 1432, 1411.)

We conclude that there is ample justification to find that it was the Legislature's intent in Labor Code section 1422.2 that the Division exercise its discretion in determining what circumstances warrant the premature filing of an accusation under this section. Further, the Division may use this section to enable it to file an accusation within the statutorily prescribed time even if it has not obtained optimum results from its investigation or its efforts at conciliation.

There is little question that voluntary compliance enables the Commission to better carry out its responsibilities, and that a maximum effort should be made by the Division to accomplish this end, but we will not prescribe the precise manner in which the Division must carry out its duties. We believe that it was the intent of the Legislature to give the Division the right to salvage claims which had been otherwise unsuccessful of resolution, by filing them on the last day statutorily possible through utilization of the "circumstances warranted" clause.

## V

As an additional ground for its contention that respondents were deprived of jurisdiction over the matter of Ronnie Madson, appellants urge that the Division's failure to serve the accusation within one year

of the complaint violated the procedural requirements of Labor Code section 1422.2.

Labor Code section 1422.2[5] provided: "The accusation . . . shall be served upon the respondent . . . and shall require the respondent to answer the charges at a hearing. An accusation shall be issued, if at all, within one year after the filing of a complaint." Appellants contend that the language of the statute requires not only that the accusation be issued within the one-year period, but also that it be served within the same one-year period. Appellants cite no authority for this proposition, and we find none.

Neither section 1422.2 of the Labor Code nor the Administrative Adjudication Act (Gov. Code, § 11500 et seq.) imposes a specific time limit on the *service* of an accusation.[6] If the Legislature had intended such time limit apply, it would have stated that an accusation must be issued *and* filed within one year.

The judgments of the trial court are affirmed.

Kingsley, Acting P. J., and Early, J.,* concurred.

---

[5]Now Government Code section 12965, as amended and added by Statutes of 1980.

[6]See Government Code section 11505 which provides: "Upon the filing of the accusation the agency shall serve a copy thereof on the respondent as provided in subdivision (c). . . . [¶] . . . [¶] (c) The accusation and all accompanying information may be sent to respondent by any means selected by the agency. But no order adversely affecting the rights of the respondent shall be made by the agency in any case unless the respondent shall have been served . . . ."

*Assigned by the Chairperson of the Judicial Council.