[S.F. No. 23209. In Bank. July 16, 1975.]

CITY OF FAIRFIELD et al., Petitioners, v.
THE SUPERIOR COURT OF SOLANO COUNTY, Respondent;
E. P. ANDERSON et al., Real Parties in Interest.

## COUNSEL

Wilson, Jones, Morton & Lynch, Jeremiah J. Lynch and Robert G. Auwbrey for Petitioners.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Anthony C. Joseph and Anthony M. Summers, Deputy Attorneys General, as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Kilpatrick, Peterson & Ely, Dwight C. Ely and Henry H. Kilpatrick for Real Parties in Interest.

## OPINION

**TOBRINER, J.**—Contending that they were denied a fair hearing on an application for a use permit, E. P. and Jack Anderson, partners doing business as Commercial Real Estate Service (hereafter "Commercial"), sought to depose two of the councilmen who voted to deny the permit. The councilmen refused to answer the questions put by Commercial's attorney and, when ordered to answer by the trial court, petitioned for writ of prohibition.

We first observe that under Code of Civil Procedure section 1094.5, evidence additional to the administrative record can be introduced only

if that evidence could not with reasonable diligence have been presented at the administrative hearing, or was improperly excluded at that hearing. This limitation on the admission of post-administrative evidence works a corresponding limitation on post-administrative discovery, restricting inquiries to those reasonably calculated to lead to the discovery of additional evidence admissible under the terms of section 1094.5. Since Commercial has made no showing that its questions to the councilmen were reasonably calculated to lead to the discovery of admissible evidence, we issue a writ of prohibition to bar enforcement of the order compelling discovery.

For the guidance of the parties in further proceedings, we also explain that the questions propounded by Commercial exceed the scope of permissible discovery. ▆ Under the principles established in *United States* v. *Morgan* (1941) 313 U.S. 409 [85 L.Ed. 1429, 61 S.Ct. 999], and reiterated recently by this court in *State of California* v. *Superior Court (Veta)* (1974) 12 Cal.3d 237 [115 Cal.Rptr. 497, 524 P.2d 1281], Commercial may not question the councilmen to determine what evidence they relied upon, or what reasoning they employed, in voting against the permit application. Commercial's attempt to elicit proof that the councilmen stated their opposition to the permit in advance of the administrative hearing is equally improper; a councilman has a right to state his views on matters of community policy, and his vote may not be impeached because he does so.

We base our recitation of the factual setting of this proceeding upon the administrative record and the briefs and pleadings of the parties. Commercial applied to the Fairfield City Council for a planned unit development permit to allow construction of a shopping center upon property held by Commercial as lessee under a 55-year lease. The council scheduled a hearing for April 2, 1974, to consider the adequacy of an environmental impact report on the proposed development and to determine whether to grant the permit. At the outset of the hearing, the attorney representing Commercial requested Mayor Manuel Campos and Councilman W. T. Jenkins to disqualify themselves from participation. Commercial filed two declarations in support of this request. One, signed by both Anderson brothers, stated that before the hearing Mayor Campos had told them that he was opposed to the shopping center. The other, signed by Jack Anderson, stated that Councilman Jenkins spoke against the shopping center at two meetings of the city planning

commission, and in response to an audience question at a candidate's night meeting, reiterated his opposition.

Both Campos and Jenkins refused to disqualify themselves. Following a hearing the council approved a modified environmental impact report, and then voted, 3-2, to deny the planned unit development permit. Both Campos and Jenkins voted with the majority. ██ Commercial then petitioned the superior court for administrative mandamus,[1] alleging that the bias of Campos and Jenkins denied them a fair hearing, and that the council's decision was arbitrary and contrary to the evidence.[2]

Without waiting for an answer to its complaint, Commercial arranged to take the deposition of Campos and Jenkins. Campos appeared for his deposition, but on advice of counsel refused to answer most of the questions put to him by Commercial. The parties stipulated that if Jenkins were deposed, he would also refuse to answer inquiries similar to those which Campos declined to answer.[3]

The unanswered questions fall roughly into two categories. The first category includes questions that inquired into the evidence examined and relied upon by the commission and the reasoning process underlying the rejection of the application. Specifically it embraced inquiry into Campos' knowledge of city zoning laws, the planning commission report, the content of the declarations filed at the hearing, and other matters

[1]The city council in voting to deny Commercial's application for a planned unit development permit was acting in a quasi-judicial capacity. (See *San Diego Bldg. Contractors Assn.* v. *City Council* (1974) 13 Cal.3d 205, 212-215, fn. 5 [118 Cal.Rptr. 146, 529 P.2d 570]; *Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826, 834 [323 P.2d 71]; *Johnston* v. *Board of Supervisors* (1947) 31 Cal.2d 66, 73 [187 P.2d 686].*) A writ of mandamus under Code of Civil Procedure section 1094.5 is an appropriate remedy for review of such quasi-judicial determinations. (See *Siller* v. *Board of Supervisors* (1962) 58 Cal.2d 479 [25 Cal.Rptr. 73, 375 P.2d 41].)

*Overruled on other grounds in *Bailey* v. *County of Los Angeles* (1956) 46 Cal.2d 132, 139 [293 P.2d 449].

[2]Code of Civil Procedure section 1094.5, subdivision (b), provides that in an administrative mandamus action "The inquiry . . . shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; *whether there was a fair trial;* and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Italics added.)

[3]The specific stipulation is that Jenkins "would be asked the same questions basically that were asked [of Campos] and that [the] objections would be the same and they would go to . . . each similar question that might be asked."

pertaining to the permit application;[4] we include also under this category Commercial's parting query asking "what factors [Campos] took into consideration in making up his mind" to vote against the permit. The second category included questions that sought to discover when Campos had decided to vote against the permit and whether Campos and Jenkins had stated this opposition to the proposed shopping center at a date earlier than the council meeting.[5]

Counsel for the city objected to the questions, asserting that the superior court trial was limited to a review of the administrative record and that quasi-judicial officers were not subject to deposition. Nevertheless, on motion of Commercial, the superior court ordered Campos and Jenkins to respond to the questions put at deposition. Seeking to restrain enforcement of that order, the city filed the instant petition for writ of prohibition.

■ We first explain that in an action for administrative mandamus an order compelling discovery must rest upon a showing that such discovery is reasonably calculated to lead to evidence admissible under Code of Civil Procedure section 1094.5, subdivision (d).[6] This section

---

[4]Commercial asked Campos questions such as:
"Did you know that the Fairfield City Planning Commission voted five to two in favor of Anderson's PUD application?
"Are you familiar with T zoning in the City of Fairfield?
"Do you consider the Tooby property upon which is located the J. C. Penny store a shopping center?
"Did you feel that [the city director of environmental affairs] presentation to the Council was an unbiased summation of the action of the Planning Commission . . .?
"Are you familiar with the money that has been spent over the years by the owners of the subject property as far as the donation of property for the use of streets, the paving of streets and the donation of certain property on the western side?"

[5]This category includes the following unanswered questions:
". . . when did you make up your mind how you were going to vote on the PUD application of the Anderson boys?
". . . did you discuss the matter of the PUD application of the Anderson boys with any individual prior to April 2, 1974?
"Did you promise any group in the City of Fairfield that you would vote against the PUD application of the Anderson Brothers prior to April 2, 1974?
"Did you participate in a candidate's night in which Councilman Jenkins participated?
"Did you ever tell any individual prior to April 2, 1974, that you had a closed mind on the subject of the Anderson's PUD?"

[6]In an ordinary civil action, discovery is not limited to questions which may lead to admissible evidence, but includes inquiries relevant to the subject matter of the action which may be helpful in preparation for trial. (See *Pacific Tel. & Tel. Co. v. Superior Court* (1970) 2 Cal.3d 161, 172-173 [84 Cal.Rptr. 718, 465 P.2d 854].) An administrative mandamus action, on the other hand, reviews the administrative record which should contain all evidence the parties consider necessary to the resolution of contested issues. Consequently posthearing discovery may reasonably be limited to inquiries calculated to

limits the admission of evidence additional to the administrative record to "relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing . . . ." As three recent decisions point out, subdivision (d)'s restriction upon the admission of new evidence in an administrative mandamus action necessarily restricts the scope of discovery in such action.

In *State of California* v. *Superior Court (Veta), supra,* 12 Cal.3d 237, Veta addressed interrogatories to the California Coastal Zone Conservation Commission. We rejected Veta's argument that its right to discovery was not limited by Code of Civil Procedure section 1094.5, subdivision (d), but noted that to the extent that Veta "can justify the interrogatories under that provision, the Commission must file answers to them." (12 Cal.3d at p. 257.)

In *State of California* v. *Superior Court (Robins)* (1971) 16 Cal.App.3d 87, 94 [93 Cal.Rptr. 663], the Court of Appeal observed that "Robins made no showing in the trial court that the evidence sought by discovery was improperly excluded or that the evidence could not, with the exercise of reasonable diligence, have been produced at the administrative hearing." It concluded that "Therefore, the order granting discovery should not have issued, and the trial court must be restrained from enforcing its order." *(Ibid.)*

Finally, in *Transcentury Properties, Inc.* v. *State of California* (1974) 41 Cal.App.3d 835 [116 Cal.Rptr. 487], the plaintiff attempted to depose the staff of the state and regional coastal commissions. Citing section 1094.5, subdivision (d), the Court of Appeal held that because plaintiffs "failed to show that the evidence sought by discovery was improperly excluded by the state commission or that the evidence could not have been produced at the administrative hearing with the exercise of reasonable diligence, there is no basis for allowing discovery." (41 Cal.App.3d at pp. 842-843.)

In the present case, Commercial has made no attempt to justify the questions posed at deposition within the limits of section 1094.5. Instead, it argues that because it asserts that the council denied it a fair hearing, section 1094.5 does not limit the admission or discovery of evidence.

---

yield evidence which through no fault of the offeror does not appear in the administrative record. (See Cal. Administrative Mandamus (Cont. Ed. Bar 1966) § 12.9.)

Commercial relies on the decision of the Court of Appeal in *Saks & Co.* v. *City of Beverly Hills* (1951) 107 Cal.App.2d 260 [237 P.2d 32].[7] The court there treated the plaintiff's allegation that the councilman, having predetermined the matter at issue, denied plaintiff a fair hearing as charging that the board had acted arbitrarily, and held that "Where there is pleading and proof that a local board had acted arbitrarily, capriciously, or fraudulently the superior court will . . . afford petitioner a trial de novo." (107 Cal.App.2d at p. 264.) ■ Commercial interprets the term "trial de novo" as a grant of a right to a full civil trial before the superior court unlimited by either the administrative record or the provisions of section 1094.5.

The holding of *Saks & Co.* that allegations of arbitrary agency action compel a trial de novo in the superior court was rejected, and the decision itself overruled, in *Fascination, Inc.* v. *Hoover* (1952) 39 Cal.2d 260, 264-266 [246 P.2d 656]. Commercial seeks to distinguish *Fascination* on the ground that the plaintiff in *Fascination* did not predicate its allegations of arbitrary action on alleged agency denial of a fair hearing. But whatever questions may remain after that decision, the issue has been clarified in later cases. Commercial is entitled to an *independent* judicial determination of the issue of whether it received a fair administrative hearing. (See *Western Air Lines, Inc.* v. *Schutzbank* (1968) 258 Cal.App.2d 218, 226 [66 Cal.Rptr. 293]; Cal. Administrative Mandamus (Cont. Ed. Bar 1974 Supp.) § 5.9; cf. *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575, 587 [100 Cal.Rptr. 16, 493 P.2d 480].) But this independent review is not a "trial de novo" as Commercial uses that term; instead the court renders its independent judgment on the basis of the administrative record plus such additional evidence admitted under section 1094.5, subdivision (d).[8]

■ We conclude that since Commercial made no showing that its questions were reasonably calculated to lead to the discovery of evidence

---

[7]Commercial also cites our decision in *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]. This reliance is misplaced. In the first place, *Strumsky* concerns only the standard of judicial review of administrative findings; it does not discuss judicial enforcement of an applicant's right to a fair administrative hearing. In the second place, *Strumsky* held that when an administrative decision substantially affects a fundamental vested right, the superior court should make an independent determination on the administrative record; it does not authorize a trial de novo under which evidence will be introduced without regard for the requirements of section 1094.5.

[8]*Hadley* v. *City of Ontario* (1974) 43 Cal.App.3d 121, 127 [117 Cal.Rptr. 513]; *State of California* v. *Superior Court (Robins) supra,* 16 Cal.App.3d 87, 94; see *State of California* v. *Superior Court (Veta) supra,* 12 Cal.3d 237, 257.

admissible under section 1094.5, subdivision (d), the superior court erred in granting Commercial's motion to compel answers. The parties, however, have also raised several contentions concerning the propriety of the specific questions put by Commercial to the councilmen which we have set forth *supra;* indeed it is those contentions which presented the important issues of law which justified our issuance of the alternative writ. (See *Pacific Tel. & Tel. Co.* v. *Superior Court, supra,* 2 Cal.3d 161, 169; *Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185-186, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439].) We therefore discuss these issues for the assistance of the parties in further proceedings in this litigation.

The first category of questions put by Commercial, as we have explained *supra,* inquired into the evidence examined and relied upon by the councilmen, and the reasoning process underlying their rejection of Commercial's application. The United States Supreme Court in *United States* v. *Morgan* (1941) 313 U.S. 409 [85 L.Ed. 1429, 61 S.Ct. 999] condemned as improper such inquiries directed to a quasi-judicial officer. In *Morgan,* the Supreme Court criticized a deposition in which the Secretary of Agriculture was asked what evidence he had read and what briefs he had considered in making a decision: "the short of the business is that the Secretary should never have been subjected to this examination. . . . We have explicitly held . . . that 'it was not the function of the court to probe the mental processes of the Secretary.' " (313 U.S. at p. 422 [85 L.Ed. at p. 1435].)

In our recent decision in *State of California* v. *Superior Court (Veta) supra,* 12 Cal.3d 237, we reaffirmed our adherence to the *Morgan* rule.[9] Upholding the coastal commission's objection to interrogatories, we ruled that "To the extent . . . that the interrogatories seek to determine what material the Commission read and relied upon in reaching its determination and to the extent that they seek to probe the mental processes of the Commission, the trial court erred in overruling the Commission's objections . . . . Since *Morgan* prohibits an examination into the question of what evidence an administrator considered in reaching a decision, these questions were improper." (12 Cal.3d at p. 258.)

We note, however, that in *Citizens to Preserve Overton Park* v. *Volpe* (1971) 401 U.S. 402 [28 L.Ed.2d 136, 91 S.Ct. 814], the United States

---

[9]Accord: *Transcentury Properties, Inc.* v. *State of California, supra,* 41 Cal.App.3d 835, 843; *State of California* v. *Superior Court (Robins) supra,* 16 Cal.App.3d 87, 94-95.

Supreme Court established an exception to the *Morgan* rule. Federal statutes[10] prohibited the Secretary of Transportation from authorizing construction of a highway through a public park if a feasible and prudent alternative route existed; if no such route were available, he could approve construction only after undertaking all possible planning to minimize harm to the park. Plaintiffs contended that the Secretary had not complied with these statutory commands. Rejecting plaintiffs' request to depose the Federal Highway Administration, the district court granted summary judgment for defendant.

The Supreme Court reversed that judgment. Refusing to limit review to the administrative record, the court held that "since the bare record may not disclose the factors that were considered or the Secretary's construction of the evidence . . . the [district] court may require the administrative officials who participated in the decision to give testimony explaining their action." (401 U.S. at p. 420 [28 L.Ed.2d at pp. 155-156].) The court distinguished *Morgan* as a case in which the administrator rendered formal findings; in *Overton Park,* the court stated, "there are no such formal findings and it may be that the only way there can be effective judicial review is by examining the decisionmakers themselves." *(Ibid.)*

Commercial suggests that since the city council in the present case rendered no findings, Commercial, under the exception established in *Overton Park,* may depose the councilmen to ascertain the basis of their decision. We conclude, however, that *Overton Park* does not apply to California actions for review of quasi-judicial proceedings. (See *American Chemical Corp.* v. *County of Los Angeles* (1974) 42 Cal.App.3d 45, 53 [116 Cal.Rptr. 751].)

Under *Overton Park,* the responses of the administrator to questions put at trial or discovery substitute for findings as a basis for judicial review. Section 1094.5, however, provides for judicial review based upon the findings of the administrative body—not for review based upon the deposition of the administrator or some other less satisfactory substitute for findings—and thus by implication imposes upon the agency a duty to render findings. ■ As we stated in *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 12]: "implicit in section 1094.5 is a requirement that the agency which renders the challenged decision must set forth

---

[10] 49 United States Code section 1653(f); 23 United States Code section 138.

findings to bridge the analytic gap between the raw evidence and ultimate decision or order."[11]

■ In short, in a quasi-judicial proceeding in California, the administrative board should state findings. If it does, the rule of *United States* v. *Morgan, supra,* 313 U.S. 409, 422 [85 L.Ed. 1429, 1435] precludes inquiry outside the administrative record to determine what evidence was considered, and reasoning employed, by the administrators. (See *Camp* v. *Pitts* (1973) 411 U.S. 138, 142-143 [36 L.Ed.2d 106, 111-112, 93 S.Ct. 1241].) If it does not state findings, the remedy, depending on the case, is to annul the administrative action or to remand the matter to the board for findings, not to take the depositions of the administrators as a substitute for findings. (See *Hadley* v. *City of Ontario, supra,* 43 Cal.App.3d 121, 128-129.)

The second category of questions put by Commercial, as we have explained above, sought to discover evidence to support Commercial's charge that councilmen Campos and Jenkins stated their opposition to the proposed shopping center before the council hearing. As we shall show, however, this inquiry is irrelevant; even if Commercial could prove that Campos and Jenkins had stated their views before the hearing, that fact would not disqualify them from voting on the application.

The Fairfield city zoning ordinance prescribed no specific standards for the grant of a planned unit development permit.[12] The proceedings

[11]Although our opinion in *Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506, was filed subsequent to the administrative hearing on the case at bar, *Topanga*'s holding that section 1094.5 requires findings in quasi-judicial proceedings is retroactive. (See *Woodland Hills Residents Assn., Inc.* v. *City Council* (1975) 44 Cal.App.3d 825, 838-839 [118 Cal.Rptr. 856]; *Hadley* v. *City of Ontario, supra,* 43 Cal.App.3d 121 (by implication).)

[12]Section 21, subdivision (a) of the Fairfield City Zoning Ordinance states that:

"Where a special design proposal for a large scale development makes it desirable to apply regulations more flexible than those contained elsewhere in this ordinance, a planned unit development permit may be granted. The purpose of such permit is to grant diversification in the location of structures and other site qualities while insuring adequate standards relating to public health, safety, welfare, and convenience in the use and occupancy of buildings and facilities in planned building groups."

Subdivision (b) of section 21 states that the planning commission may grant a planned unit development exceptions from regulatory restrictions when three conditions are met:

"(1) The tract or parcel of land involved must be a minimum of two (2) acres in area and must be either in one ownership or the subject of an application filed jointly by the owners of all the property included.

"(2) The proposed development must be designed to produce an environment of stable and desirable character, and must provide overall standards of population

before the city council here did not turn upon the adjudication of disputed facts or the application of specific standards to the facts found; the few factual controversies were submerged in the overriding issue of whether construction of the shopping center would serve the public interest.

In a city of Fairfield's size, the council's decision on the location and construction of a shopping center could significantly influence the nature and direction of future economic growth. The construction of that center will increase both the city's revenue and its expenditures; will affect the value not only of neighboring property, but of alternative shopping center sites and of existing businesses; will give employment but may also aggravate traffic and pollution problems. These topics are matters of concern to the civic-minded people of the community, who will naturally exchange views and opinions concerning the desirability of the shopping center with each other and with their elected representatives.

A councilman has not only a right but an obligation to discuss issues of vital concern with his constituents and to state his views on matters of public importance. His role in the community is depicted in *Todd* v. *City of Visalia* (1967) 254 Cal.App.2d 679 [62 Cal.Rptr. 485]. Rejecting a contention that councilmen who had acquired information outside the hearing room concerning a proposed assessment district were disqualified from voting at a hearing to determine the validity of that district, the court observed that: "A city councilman is elected usually because of his acquaintanceship and popularity. He may not be instructed on many of the technical matters to which he is called upon to pass judgment. He is frequently an extrovert, who circulates widely in the community and talks with businessmen and voters about all sorts of questions that may come before the council. He is a legislator, an administrator, and at times a quasi-judicial officer. In the present instance, it would be strange if the members of the council living and working in Visalia did not have considerable cognizance of what was going on in the city, of the efforts of

densities, of open space, of circulation, and of off-street parking in conformance with the master plan of the city and at least equivalent to those required by the terms of this ordinance for the zoning district in which the development is to be located.

"(3) The various elements of the development plan must relate to one another in such a way as to form a harmonious, integrated whole of sufficient unity to justify exceptions to the formal regulations of this ordinance, and must not be inharmonious to development outside the boundary of the submitted development plan."

The language of both subdivisions (a) and (b) is permissive, authorizing the city to grant planned unit development permits, and necessary exceptions from regulations, but not requiring it to do so.

some people to form the present assessment district and of the municipal needs in this respect, fanciful or actual." (254 Cal.App.2d at p. 691.)

Many of the alleged statements on these community matters that plaintiffs seek to adduce were made during the election campaign of Campos and Jenkins. ■ Campaign statements, however, do not disqualify the candidate from voting on matters which come before him after his election. In *Wollen* v. *Fort Lee* (1958) 27 N.J. 408 [142 A.2d 881], the court stated: "[I]t would be contrary to the basic principles of a free society to disqualify from service in the popular assembly those who had made pre-election commitments of policy on issues involved in the performance of their sworn . . . duties. Such is not the bias or prejudice upon which the law looks askance. . . . The contrary rule of action would frustrate freedom of expression for the enlightenment of the electorate that is of the very essence of our democratic society." (142 A.2d at p. 888; see *City of Farmer's Branch* v. *Hawnco., Inc.* (Tex.Civ.App. 1968) 435 S.W.2d 288, 292; *Kramer* v. *Bd. of Adjust., Sea Girt* (1965) 45 N.J. 268 [212 A.2d 153, 160-161]; *Binford* v. *Western Electric Company* (1963) 219 Ga. 404 [133 S.E.2d 361, 364]; cf. *Montana Power Co.* v. *Public Service Commission* (D.Mont. 1935) 12 F.Supp. 946.)

In *Moskow* v. *Boston Redevelopment Authority* (1965) 349 Mass. 553 [210 N.E.2d 699], reviewing a city council's determination to exclude certain property from a redevelopment plan, the Massachusetts Supreme Judicial Court ruled that: "No member of the city council was disqualified because he had expressed an opinion or taken sides on the merits of the Plan including Parcel 8 whether during an election campaign or at any other time. . . . The issue was wholly political in character. . . . It was likewise one of great interest in the community, and the voters were entitled to know the views of the candidates, who had a right, and perhaps a duty, to state their positions." (210 N.E.2d at p. 707.)

Plaintiffs rely on *Saks & Co.* v. *City of Beverly Hills, supra,* 107 Cal.App.2d 260. The granting of numerous variances, including the parking lot variance at issue there inspired the voters to adopt an initiative revoking all variances. When enforcement of the initiative was enjoined, three of its proponents campaigned for the city council on a platform of revocation of the variances. Following their election, they voted to revoke the variance at issue. The Court of Appeal affirmed a trial court finding that the three councilmen were disqualified.

In light of the reasons stated and authorities cited in this opinion, we conclude that *Saks & Co.* v. *City of Beverly Hills, supra,* 107 Cal.App.2d 260, was erroneously decided and must be disapproved. The voters of Beverly Hills were entitled to discover the views of candidates for city council concerning the council's practice of granting widespread variances from zoning requirements, and the candidates were entitled to express those views. The Court of Appeal decision in *Saks* effectively thwarted representative government by depriving the voters of the power to elect councilmen whose views on this important issue of civic policy corresponded to those of the electorate.

■ We conclude that even if Commercial's inquiries uncovered proof that Campos and Jenkins had made prehearing statements opposing the application, that proof would not serve to disqualify Campos or Jenkins, and would be inadmissible on grounds of relevancy. Since Commercial's inquiries therefore were not reasonably calculated to lead to the discovery of admissible evidence, Campos and Jenkins had no duty to respond.

A peremptory writ of prohibition will issue directing the superior court to vacate its order of July 16, 1974.

Wright, C. J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

McComb, J., concurred in the judgment.