Filed 5/23/18; Certified for Publication 6/21/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>BARRY WINOGRAD,<br><br>　　　　Defendant;<br><br>AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, LOCAL 1902, AFL/CIO,<br><br>　　　　Real Party in Interest and Appellant. | B276898<br><br>(Los Angeles County Super. Ct. No. BS155355) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County.  Mary H. Strobel, Judge.  Affirmed.

　　　　Rothner, Segall & Greenstone, Anthony Segall and Eli Naduris-Weissman for Real Party in Interest and Appellant.

　　　　Metropolitan Water District of Southern California, Marcia L. Scully, Heather C. Beatty, and Henry Torres, Jr. for Plaintiff and Respondent.

American Federation of State, County, & Municipal Employees, Local 1902, AFL/CIO (AFSCME), real party in interest and appellant, appeals from a trial court decision granting a writ of administrative mandamus filed by respondent Metropolitan Water District of Southern California (the District). The District filed the petition under Code of Civil Procedure section 1094.5 to challenge the decision of a hearing officer on an AFSCME grievance. The trial court set aside the hearing officer's decision on the grounds that the hearing officer's decision (1) granted relief on an issue that was not ripe; and (2) exceeded the scope of the issue before him.

We agree that the matter did not present a ripe controversy. We further agree that the hearing officer exceeded the scope of the issue before him. Finally, under the circumstances of this case, we conclude the hearing officer exceeded his authority pursuant to the Memorandum of Understanding between the parties (MOU). Therefore, we affirm the judgment of the trial court.

## FACTUAL BACKGROUND

**The parties**

AFSCME is the exclusive representative of employees in the general employees bargaining unit of the District.

The District is a governmental agency, formed under the Metropolitan Water District Act (Stats. 1969, ch. 209, p. 492 et seq., 72B West's Ann. Wat. – Appen. (1995 ed.) § 109-1 et seq.). It imports, stores, and distributes water to member water agencies in Southern California. (*American Federation of State, County & Municipal Employees v. Metropolitan Water Dist.* (2005) 126 Cal.App.4th 247, 253.)

Barry Winograd acted in his official capacity as a hearing officer for the hearing officer appeal pursuant to the terms of the MOU.

2

**The labor agreements**

AFSCME and the District have executed labor agreements under the Meyers-Milias-Brown Act (MMBA) (Gov. Code, §§ 3500-3511). AFSCME and the District are party to two labor agreements relevant to this dispute: the MOU and a 2005 agreement referred to by the parties as a "side letter." The side letter concerns recruitment procedures and was incorporated into and placed at the end of the MOU.

Section 5.2 of the MOU is captioned "Recruitment and Selection." Section 5.2.1(D) of the MOU defines "Employment Testing":

> "A test is an instrument administered by the Human Resources Group, used as a basis for any employment decision including, but not limited to, hiring and competitive-bid promotion. Such tests may measure aptitude, achievement, and other proficiencies. Examples include, but are not limited to, a review of records, interview, typing, computer skills, basic skills, job knowledge, work sample or other demonstration tests deemed reliable and job-related as approved by the Human Resources Group Manager."

Section 5.2.3 provides that "Qualified employees shall be notified of the time and location of a test at least three (3) days in advance." Employees are "entitled to release time to participate in and commute to, a test."

The 2005 side letter further states that "All candidates meeting the Minimum Requirements for a position shall be allowed to compete in the examination process."

**The District's recruitment and selection procedures**

Aside from the procedures set forth in the MOU, the District maintains its own recruitment and selection procedures for job vacancies. The District's written procedures "adhere to

3

the provisions of all relevant Operating Policies, respective Bargaining Unit Memorandums of Understanding, and the Administrative Code." As to screening of application packages, the recruitment and selection procedures for 2010 provided that "Internal applications are screened for Minimum Requirements only" and that "Internal candidates meeting the minimum requirements for a position shall be allowed to compete in the examination process." Under "Phase Four: Testing and Interview," the procedures provide: "Internal applicants who meet Minimum Requirements will be interviewed first for any position that is part of a bargaining unit."

The District's 2012 recruitment procedure publication added the procedure referred to in this matter as "comparative analysis." Pursuant to this procedure, "The Hiring Manager reviews resumes and codes each candidate in MyJobs SmartView, accordingly." The options following such analysis are: "Recommend to proceed - Invited to interview," "Possible Candidate - Hold for now (no action taken at this point)," and "Recommend Not to Proceed - (no action taken at this point)."

**The grievance and appeal procedure**

Article 6 of the MOU contains a multi-step "Grievance and Appeal Procedure." Pursuant to section 6.3.1, a "grievant" is "an employee, a group of employees, or AFSCME Local 1902." A "grievance" is defined as "an alleged misapplication of a specific provision of (1) this MOU, (2) the Administrative Code, or (3) other rules or regulations governing personnel practices and other terms and conditions of employment within the scope of negotiations, which alleged misapplication adversely affects the grievant."

The MOU provides for an informal resolution procedure prior to the filing of a written grievance. It then provides for a two-step formal grievance procedure. If a grievant is not satisfied

4

with the resolution proposed at the informal level, the grievant may "file a written grievance with his Unit or Section Manager on the District's grievance form." Within 10 days, the Unit or Section Manager shall meet with the grievant and give a written response to the grievant.

If the grievant is not satisfied with the written response at Level 1, described above, the grievant may "file a grievance with his Group Manager . . . on the original grievance form."

After these grievance steps are exhausted, the MOU provides for an "Appeal Procedure." Among the subjects that may be appealed is "[a]lleged misapplication of a specific provision of this MOU" as well as "[w]ritten rules or regulations governing personnel practices."

There is a preliminary step if one party contends that the grievance is not "appealable." If a party raises a dispute as to appealability, the following procedure, found in section 6.7.1 E, applies:

> "In the event that there is a dispute as to whether an issue is appealable to a Hearing Officer, the Hearing Officer shall decide the dispute. The parties agree that the Hearing Officer shall consider the procedural arguments, including written briefs (if requested by either party), and render a written decision, prior to the hearing on the merits of the dispute. If the Hearing Officer determines that the issue is not appealable, the grievance will be dismissed. If the Hearing Officer determines that the issue is appealable, the grievance will then be set for hearing on the merits before a different Hearing Officer."

The MOU specifies that "[h]earing of a grievance by the Hearing Officer will be limited to the written grievance as

originally filed by the employee to the extent that said grievance has not been satisfactorily resolved."

After the hearing, the Hearing Officer provides a decision. "The decision of the Hearing Officer shall not add to, subtract from, or otherwise modify the terms and conditions of [the] MOU." The decision is "final and binding" on the parties. "Upon completion of the Hearing Officer process," the decision of the Hearing Officer can be appealed pursuant to Code of Civil Procedure section 1094.5.

**The grievance in this matter**

The grievance in this matter concerns the District's use of a "comparative analysis" procedure in job postings dating back to 2005. For example, in a job posting for associate engineer, with an application filing period of May 18, 2005 through June 7, 2005, the District specified:

> "The application and response to supplemental questionnaire will be used to screen an applicant's ability to meet the minimum requirements. Based on a comparative analysis, only those candidates demonstrating the strongest backgrounds will be invited to testing."[1]

The above language was qualified with an asterisk, which noted that "Metropolitan policy provides for all internal applicants to participate in all portions of the examination process if they meet minimum requirements." However, AFSCME points out that sometime in 2011 the District removed from job postings the crucial asterisk that protected AFSCME members.

---

[1] There was some variation in the wording of the job postings.

# PROCEDURAL HISTORY

## Level 1 grievance procedure

On May 1, 2013, AFSCME filed a grievance form, Level 1. The grievance stated:

> "AFSCME has recently become aware that the District is placing the following language in some job postings. '. . . . [B]ased on a *comparative analysis*, only those candidates demonstrating the strongest backgrounds will be invited to participate in a technical written test and a performance test.' This 'comparative analysis' language infers an additional layer of testing, is not a recognized examination process, and may be used to arbitrarily and unfairly discriminate against AFSCME union members that apply. The Union has not been informed or negotiated any changes to the examination process. The Union has not been contacted or informed of any changes to HR Recruitment procedures regarding a comparative analysis. [¶] As the District is aware, the 2011-2016 MOU was negotiated in good faith with a full understanding regarding HR recruitment procedures, which state 'All individuals meeting the Minimum Requirements for a position shall be allowed to compete in the examination process.'"

The specific provisions alleged to have been misapplied were "MOU 1.1 - 1.7, 5.2, & the 2005 HR Recruitment Sideletter (incorporated into the 2011-2016 MOU)."

As a requested remedy, AFSCME requested that the District "[r]emove from all future recruitment postings 'comparative analysis,' as this is not a recognized examination process and infers an additional layer of testing not previously discussed or agreed-to in the meet and confer process, and is a violation of the negotiated 2011-2016 MOU."

7

A grievance meeting was held on May 15, 2013. On July 12, 2013, the District provided a written response to the grievance. The District denied the grievance, explaining:

> "The Union stated it first became aware of the District's use of comparative analysis upon seeing the following language referenced in Job Posting No. 3533719 for an Associate Engineer dated February 26, 2013, under the heading of Selection Procedure:

> "*The applicant profile, resume, and response to the questionnaire will be used to screen an applicant's ability to meet the minimum requirements. Based on a comparative analysis, only those candidates demonstrating the strongest backgrounds will be invited to participate in a written test and oral panel interview.*"

The District took the position that the term "comparative analysis" is simply another term for a "review of records," and that a review of records is a permitted "test" as set forth in the MOU under 5.2.1 D, "*Employment Testing.*" The District quoted the portion of the MOU which describes "a review of records" as an employment test. The District concluded that pursuant to the MOU, a review of records can be part of the examination process.

However, the District stated that it was considering removing the contested language from job postings, and instead placing the language on the District's web page as a way to help applicants understand the selection process.

Seeing no violation of the MOU, the grievance was respectfully denied.

**Level II grievance procedure**

AFSCME was not satisfied with the outcome of the Level 1 grievance procedure, therefore chose to elevate the matter to a Level II grievance. The Level II grievance meeting was held on

8

September 20, 2013. On October 14, 2013,the District provided its written response. The grievance was again denied. The District explained:

> "The crux of this matter centers on the Union's objection to the use of comparative analysis in order to identify those candidates demonstrating the strongest backgrounds, who will then proceed to the next phase of the examination process for a recruitment. As explained in the Level 1 Response, comparative analysis is not a new layer of testing, but simply a term used to describe an evaluation of the information provided by the candidate as part of a review of records, which is referenced as a test in the MOU under 5.2.1 D *Employment Testing.*"

The District respectfully disagreed with AFSCME's interpretation of the review of records to constitute an additional step prior to the testing process. Seeing no violation of the MOU or any other provisions, the grievance was denied.

On October 14, 2013, AFSCME requested that the matter be heard by an Appeal Officer.

**Proceedings before the Hearing Officer**

The District did not assert that the issue was not appealable pursuant to section 6.7.1 E of the MOU. Instead, the matter was presented to the Hearing Officer on its merits.

The matter commenced on September 10, 2014, in front of Hearing Officer Barry Winograd. The hearing officer inquired, "Do the parties stipulate that the previous steps of the grievance procedure have either been completed or waived and we are properly at the arbitration stage?" The District's counsel responded in the affirmative.

The parties stipulated to the following statement of the issue before the Hearing Officer:

"Did [the District] violate MOU Section 5.2 and the 2005 HR Recruitment Side Letter, as incorporated into the 2011-2016 MOU, by including the following selection procedure in Job Posting 3533719: 'Based on a comparative analysis, only those candidates demonstrating the strongest backgrounds will be invited to participate in a written test and oral panel interview?' If so, what is the appropriate remedy?"

During the hearing, the parties reached a stipulation regarding the specific job posting that was the subject of the hearing. The stipulation provided:

"[F]or the recruitment in question, 124 persons submitted their interest in the position. And of the 124, 57 did not meet the minimum qualifications, and two submitted late applications. So those 59 applicants were screened out. There was only one internal applicant who did not meet the minimum qualifications, and that applicant was screened out."

Thus, the parties agreed that "the comparative analysis test was not applied to any internal candidate."

At the hearing, the parties agreed to the admission of 17 joint exhibits relating broadly to the District's recruitment practices. The exhibits included job postings between 2001 and 2014, the District's recruitment and selection procedures from 2010, and the recruitment procedures for hiring managers dated May 2012.

Following the hearing, the parties filed post-hearing briefs. AFSCME described the removal of the asterisk as a change in the District's policy. It argued that the District's current position was that it may conduct a comparative analysis without advancing internal candidates meeting minimum qualifications to further testing stages. Prior to removing the asterisk,

10

AFSCME argued, it was the District's practice to advance internal applicants meeting minimum requirements to all portions of the examination process. AFSCME requested an order directing the District to cease and desist from use of the "comparative analysis" and to follow the MOU with respect to recruitment.

AFSCME anticipated that the District would argue "that because comparative analysis was not applied in the instant case to eliminate a qualified applicant, there is no present dispute for the Arbitrator to resolve." AFSCME argued that this was not the case because "[t]he District has made clear that it will continue to use the practice." In conclusion, AFSCME asked that the Hearing Officer provide an "award and order declaring that 'comparative analysis' of internal candidates who meet minimum qualifications violates the agreement between the parties."

In its post-hearing brief, the District argued that the matter presents a straightforward issue of contract interpretation. The District further argued that the MOU specifically authorizes the use of comparative analysis for employment testing and that the District had no obligation to cease its "long-standing practice of using comparative analysis as an employment test during the recruitment and selection process."

In addition, the District argued that the matter was not ripe for decision, as AFSCME had not presented any evidence of harm. The District argued:

> "AFSCME has not developed an evidentiary record demonstrating how [the District's] use of [a] comparative analysis employment test impacted its membership, nor can it demonstrate that there is an applicant who would have passed to other steps in the application process . . . without [the District's] use of a 'review of records' test in this instance."

11

The District noted that arbitrators should not "render advisory opinions responding to hypothetical transgressions."

**The Hearing Officer's decision**

On February 20, 2015, the hearing officer issued a written decision. The hearing officer acknowledged that the matter was based on "a recruitment procedure set forth in a job posting in February 2013." The hearing officer further acknowledged that "as the parties stipulated, there was only one internal applicant, and, as that individual did not meet the minimum qualifications, a 'comparative analysis' approach was not utilized." However, the hearing officer stated that the District "has confirmed its intent to use a 'comparative analysis' in the future, even if the term is not included in written postings. In effect, [AFSCME] is seeking declaratory relief."

Despite the absence of a justiciable controversy, the hearing officer provided a declaratory judgment regarding the language of the MOU. Specifically, the hearing officer interpreted section 5.2.1 D as "referring to objective employment performance assessments, such as the testing of physical capabilities and skills spelled out in this provision." Based on its interpretation of the MOU, the hearing officer sustained AFSCME's grievance.

As a remedy, the trial court directed the District to: "cease and desist from the use of posting language or a recruitment procedure that provides, prior to an interview, for a comparative analysis permitting only those candidates demonstrating the strongest backgrounds to participate in written testing or oral panel interviews."

**The District's petition for review**

On May 20, 2015, the District filed a petition for writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5. The District sought to set aside the hearing

officer's decision on the ground that the hearing officer failed to proceed in a manner required by law. Specifically, the District argued, among other things, that: (1) the grievance did not present a controversy ripe for decision; (2) the hearing officer's decision exceeded the scope of the stipulated issue before him; (3) the remedy imposed by the hearing officer violated section 6.7.6.A of the MOU by modifying the terms and conditions of the MOU; (4) the decision unlawfully usurped the District's authority to determine the procedures and standards of selection for employment, promotion and transfer; and (5) the hearing officer improperly relied on extrinsic evidence since there was no ambiguity that could not be resolved by analyzing the plain language of the relevant documents. The District also argued that the hearing officer committed a prejudicial abuse of discretion in that his findings were not supported by substantial evidence. The District asked that a writ of mandate issue, directing the hearing officer to set aside the decision.

**The trial court decision**

On May 17, 2016, the trial court granted the District's petition.

The trial court found that the issue presented to the hearing officer was not ripe for decision. Specifically, the trial court ruled:

> "Based on the foregoing, the issue of whether *any* form of comparative analysis utilized prior to an interview violated the MOU was not ripe. The Hearing Examiner thus exceeded the scope of the issue presented in crafting the remedy which would pertain to future action by Petitioner. And, to the extent the Hearing Officer reached his decision that all forms of future comparative analysis utilized prior to an interview would violate the side letter, there is not substantial evidence in the record to support his conclusion." (Fn. omitted.)

13

In response to AFSCME's argument that the hearing officer had the authority to fashion a remedy that resolved the issue presented, the trial court stated, "In the instant case, the issue presented was whether the comparative analysis for a specific job posting violated the MOU and, if so, what remedy was appropriate. The Hearing Examiner went beyond this issue in his ruling."

The trial court directed the hearing officer to set aside his decision and render a new decision consistent with the opinion.

On August 11, 2016, AFSCME filed its notice of appeal.

## DISCUSSION

### I. Standard of review

It is undisputed that this case does not affect a fundamental right. In reviewing a petition for writ of mandate in a case that does not affect a fundamental right, the appellate court generally reviews the administrative decision, not the trial court decision, and considers only whether "'the administrative agency committed a prejudicial abuse of discretion by examining whether the findings support the agency's decision and whether substantial evidence supports the findings in light of the whole record.'" (*Young v. City of Coronado* (2017) 10 Cal.App.5th 408, 418, fn. omitted.)

However, the trial court decision in this matter was based on a question of law: whether or not the issue before the hearing officer was ripe for review. This is the issue which AFSCME presently appeals. The question of whether a claim presents a controversy that is ripe for review is a question of law, subject to de novo review. (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1582 (*Wilson*).)

To the extent that we review the hearing officer's interpretation of the MOU and side letter, we exercise independent judgment. (*American Indian Model Schools v.*

14

*Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 286; see also *National City Police Officers' Assn. v. City of National City* (2001) 87 Cal.App.4th 1274, 1278 ["Because MOUs are binding agreements between local agencies and designated employee representatives, when the meaning of an MOU is in dispute we apply de novo review, exercising our independent judgment"].)

## II. AFSCME has not presented a ripe controversy

### A. Applicable legal principles

"'[A]n action not founded upon an actual controversy between the parties to it, and brought for the purpose of securing a determination of a point of law . . . will not be entertained.' [Citation.]" (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 59.) A controversy becomes "'ripe'" when "'the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' [Citation.]" (*Ibid.*)

A ripeness inquiry involves a two-step analysis: first, whether the issue is appropriate for immediate judicial resolution; and second, whether the complaining party will suffer a hardship from a refusal to entertain its legal challenge. (*Wilson, supra*, 191 Cal.App.4th at pp. 1582-1584.)

Under the first test, "'courts will decline to adjudicate a dispute if "the abstract posture of the proceeding makes it difficult to evaluate . . . the issues" [citation], if the court is asked to speculate on the resolution of hypothetical situations [citation], or if the case presents a "contrived inquiry" [citation].' [Citation.]" (*Wilson, supra,* 191 Cal.App.4th at pp. 1582-1583.)

Under the second test, courts generally will not consider issues based on speculative future harm. (*Wilson, supra*, 191 Cal.App.4th at pp. 1584-1585.) This is particularly true where the complaining party will have the opportunity to pursue

15

appropriate legal remedies should the anticipated harm ever materialize.  (*Id.* at p. 1585.)

The MOU between the parties also contains a ripeness requirement, as it mandates that a "grievance" must be an alleged "misapplication of a specific provision" of the MOU or related rules, which "adversely affects the grievant."

### B.  *Application to this case*

In the present matter, the parties stipulated that their dispute involved the following issue:

> "Did [the District] violate MOU section 5.2 and the [side letter] by including the following selection procedure in Job Posting 3533719:  'Based on a comparative analysis, only those candidates demonstrating the strongest backgrounds will be invited to participate in a written test and oral panel interview?'  If so, what is the appropriate remedy?"

Thus, the issue was framed as a question of whether the District violated the MOU and side letter agreement in a particular job posting.  As the hearing officer and the parties acknowledged, the only union applicant for job posting 3533719 did not meet the minimum requirements for that job posting.

Thus, under the first prong of the ripeness test, there was no actual controversy.  Instead, the hearing officer was asked to speculate on the resolution of the hypothetical situation where a union applicant, meeting minimum requirements for the position, is subject to the comparative analysis procedure.  Under the circumstances, "'[t]he only declaratory judgment that could be rendered under the allegations of the complaint would be of an advisory nature . . . .' [Citation.]" (*Wilson, supra*, 191 Cal.App.4th at p. 1584.)  The abstract nature of the claim makes it too uncertain to constitute a justiciable controversy.  (*Id.* at p. 1583.)  That the District said it would continue to apply

16

comparative analysis in the future does not render the effect of doing so any less speculative.

Further, AFSCME will not suffer an actual hardship for a refusal to entertain its claim that the District may potentially in the future utilize the comparative analysis procedure to screen out internal candidates meeting the minimum requirements for a future job posting. In the event that such a situation arises, AFSCME may then utilize the grievance procedure to resolve the controversy.

We reject AFSCME's claim that the District waived its ripeness argument. The stipulation between the parties regarding the facts of the underlying grievance were entered into at the hearing before the hearing officer. The District timely argued to the hearing officer, both in its opening statement and post-hearing brief, that the matter was not ripe for decision. The District thus properly and timely raised the issue before the hearing officer.[2]

---

[2] Further, we find that the District was not required to challenge the appealability of the issue pursuant to section 6.7.1 E of the MOU. That provision applies when "there is a dispute as to whether an issue is appealable to a Hearing Officer." Here, there was no dispute as to the appealability of AFSCME's grievance. The previous steps of the grievance procedure had been fulfilled and the parties were properly at the appeal stage. AFSCME provides no legal authority for its suggestion that the District was required to raise the ripeness issue under Section 6.7.1 E of the MOU, rather than at the hearing.

We further reject AFSCME's speculative argument that the District "clearly was aware of these facts prior to the hearing." AFSCME appears to suggest that the District learned of the facts relevant to ripeness significantly earlier than the hearing, such that the District should be held to have forfeited the argument. AFSCME points to no evidence suggesting that the District learned of those facts significantly earlier than the date of the

### III. The hearing officer exceeded his authority by rendering a decision beyond the scope of the issue before him

The hearing officer went beyond the scope of the issue before him in ordering the District to "cease and desist from the use of posting language or a recruitment procedure that provides, prior to an interview, for a comparative analysis permitting only those candidates demonstrating the strongest backgrounds to participate in written testing or oral panel interviews."

The MOU specifies that a hearing officer's role is "limited" to hearing "the written grievance as originally filed by the employee to the extent that said grievance has not been satisfactorily resolved." Although the original grievance alleged that the "comparative analysis" procedure had been used in "some job postings," on appeal the parties narrowed the issue to a single job posting. The issue before the hearing officer was limited to the District's use of language in job posting 3533719. Nevertheless, the hearing officer directed the District to cease using all forms of comparative analysis prior to an interview in future job recruitments.

Regardless of whether the grievance involved multiple job postings or the single job posting, the MOU does not allow a hearing officer to provide broad declaratory relief. In providing declaratory relief as to all future job postings, the hearing officer went beyond the scope of the grievance before him and thus exceeded his authority.

---

hearing. Nor does AFSCME provide any legal or contractual authority for its position that, even if the District had learned of those facts significantly earlier, the District was required to raise the issue of ripeness in a challenge to the "appealability" of the matter. The issue of ripeness was promptly and properly raised before the hearing officer, and was not forfeited.

18

## IV.  The hearing officer exceeded his authority by modifying the terms and conditions of the MOU

AFSCME insists that "it was clear that the dispute concerned the District's use of comparative analysis at all, not its use in a specific job posting."  Even if the issue before the hearing officer had concerned the general use of the comparative analysis procedure, the broad decision by the hearing officer was erroneous because it violated the MOU's mandate that the decision of the hearing officer "shall not add to, subtract from, or otherwise modify the terms and conditions of [the] MOU."

Accepting the District's definition of "comparative analysis" as a "review of records," the procedure was expressly authorized by the MOU for use as a testing method for internal applicants meeting the minimum requirements for a position.[3]

The language of the relevant documents reveals this authorization.  First, the side letter provides that "'All candidates meeting the Minimum Requirements for a position shall be allowed to compete in the examination process.'"[4]  The term

---

[3]     The hearing officer did not make a specific finding as to what the term "comparative analysis" means.  However, the hearing officer appeared to accept the District's position that a "comparative analysis" was a "review of records."  AFSCME also concedes that the procedure was sufficiently well-defined in the proceedings as "an employment test, a review of records."

[4]     The side letter does *not* provide that internal applicants may participate in *all portions* of the examination process if they meet the minimum requirements, as AFSCME suggests.  Further, it does not provide that internal applicants "automatically proceed to any written or technical employment tests and then an interview."  AFSCME has inserted these various exaggerated descriptions of the language of the side letter throughout its briefs, although such language is not found in the side letter itself.

"examination process" is not defined. However, as set forth in section 5.2.1 D of the MOU, the "testing" used for a hiring decision includes, but is not limited to, "a *review of records*, interview, typing, computer skills, basic skills, job knowledge, work sample or other demonstration tests deemed reliable and job-related as approved by the Human Resources Group Manager." (Italics added.) Thus, pursuant to the plain language of the governing documents, to the extent that a "comparative analysis" consists of a "review of records," it is expressly authorized by the MOU as a type of test that may be used "as a basis for any employment decision." Comparative analysis is therefore a permitted part of the examination process.[5]

The hearing officer cited evidence that the "comparative analysis" language had been used in job postings going back to 2005. In those postings, however, "the reference to a comparative analysis of candidates demonstrating the strongest backgrounds was subject to use of an asterisk." The text following the asterisk stated that "'[District] policy provides for all internal applicants to participate in all portions of the examination process if they meet the minimum requirements.'" At some point in 2012, the asterisk was dropped. A District representative explained that the dropping of the asterisk "appears to have been linked to the District's development of codes for an online recruitment process." There was no evidence before the hearing officer that the dropping of the asterisk had actually affected the recruitment or hiring process as to any internal candidate.

The evidence thus showed that the District had been using the comparative analysis method for nearly 10 years. The District represented at the hearing its intention that "'the

---

[5]     Neither the MOU nor the side letter contains any restrictions on the timing of such a review of records, requiring that it take place only after other written tests or oral interviews.

20

practice [of comparative analysis] will continue as an employment test.'"  The practice of comparative analysis, understood as a review of records, is an authorized employment test under the MOU.  The hearing officer's determination that the procedure must not be used in any form in future job recruitment and hiring decisions, prior to imposition of a written test or oral interview, constituted an unauthorized modification of the terms of the MOU.[6]

In sum, under the circumstances of this case, the hearing officer's decision improperly modified the terms and conditions of the MOU, which allow for the use of a comparative analysis, or "review of records," as part of the examination process.  In the absence of evidence that the removal of the asterisk negatively affected the recruitment procedure as to any internal applicant, the decision exceeded the hearing officer's authority.

## V.  The trial court did not err in denying AFSCME's attempt to introduce extra-record evidence

AFSCME argues that the trial court erroneously denied its attempt to bring before the court extra-record evidence of the

---

[6]    The trial court took issue with the hearing officer's broad denunciation of the "comparative analysis" procedure on the ground that "[t]he evidentiary record does not include sufficient evidence for the Hearing Officer to make a determination as to whether all forms of comparative analysis would violate the MOU and side letter, or whether the District's use of 'comparative analysis' in the future will violate the MOU and side letter."  AFSCME contends there was never any dispute as to any other "forms" of the comparative analysis test.  Instead, AFSCME frames the question as a broad inquiry as to whether "the District had added a new layer of testing unrecognized by the MOU, not how the procedure was applied in one instance."  As set forth above, the evidence before the hearing officer showed that the comparative analysis procedure was not a "new layer of testing," but in fact had been part of the process for many years.

21

hearing officer's expertise. AFSCME did this by way of a declaration in support of AFSCME's opposition to the writ of administrative mandate. The declaration, filed concurrently with AFSCME's opposition to the writ, attached three documents: Hearing Officer Barry Winograd's "Labor Arbitration Resume," dated October 2014; a faculty profile webpage for Mr. Winograd from Berkeley Law (Boalt Hall, University of California); and the LinkedIn page of Mr. Winograd. The trial court construed this submission as a motion to augment the administrative record.

Code of Civil Procedure section 1094.5, subdivision (e) provides:

> "Where the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (f) remanding the case to be reconsidered in light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case."

The court found that AFSCME submitted the extra-record evidence without making the required showing of reasonable diligence or relevance. In addition, at least two of the documents pre-dated the hearing and AFSCME made no showing that the documents could not have been submitted at the hearing in the exercise of reasonable diligence.

Extra-record evidence is not admissible on a petition for writ of administrative mandate absent a showing that the evidence could not have been produced or was improperly excluded at the hearing. (*Fairfield v. Superior Court of Solano County* (1975) 14 Cal.3d 768, 771-772). AFSCME did not attempt to show that the evidence submitted with its opposition fit within

this "limitation on the admission of post-administrative evidence." (*Id.* at p. 772.)  Thus, the trial court did not err in denying AFSCME's motion to augment the administrative record.

## DISPOSITION

The trial court's decision granting the District's writ of administrative mandate under Code of Civil Procedure section 1094.5 is affirmed.  The District is awarded its costs of appeal.


_____, J.
CHAVEZ

We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT

Filed 6/21/18

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA,<br><br>      Plaintiff and Respondent,<br><br>    v.<br><br>BARRY WINOGRAD,<br><br>      Defendant;<br><br>AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, LOCAL 1902, AFL/CIO,<br><br>      Real Party in Interest and Appellant. | B276898<br><br>(Los Angeles County Super. Ct. No. BS155355)<br><br>ORDER FOR PUBLICATION |

THE COURT:*

      The opinion in the above entitled matter filed on May 23, 2018, was not certified for publication.

      For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____  __

*LUI, P. J., CHAVEZ, J., HOFFSTADT, J.

1