Filed 4/17/20 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROBERT ZOLLY et al., | A154986 |
| Plaintiffs and Appellants, | |
| v. | (Alameda County Super. Ct. No. RG16821376) |
| CITY OF OAKLAND, | |
| Defendant and Respondent. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on March 30, 2020, be modified as follows:

1. On page 2, at the end of footnote 2, add the following sentence:

   On February 20, 2020, the City filed an unopposed request for judicial notice of (1) a March 2014 report by the California Legislative Analyst's Office entitled "A Look at Voter-Approval Requirements for Local Taxes," and (2) excerpts from the Voter Information Guide, General Election (Nov. 2, 2010). We grant the request. (Evid. Code, § 452, subd. (c).)

There is no change in judgment.

Respondent's petition for rehearing is denied.

Dated:

_____
Humes, P.J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROBERT ZOLLY et al., | |
|      Plaintiffs and Appellants, | A154986 |
| v. | |
| CITY OF OAKLAND, | (Alameda County |
|      Defendant and Respondent. | Super. Ct. No. RG16821376) |

The City of Oakland (City) entered into various waste management contracts with Waste Management of Alameda County (WMAC) and California Waste Solutions Inc. (CWS). As part of those contracts, WMAC and CWS agreed to pay franchise fees to the City, and the City redesignated part of WMAC's franchise fee as a fee imposed pursuant to Public Resource Code section 41901 (the Redesignated Fee). Plaintiffs Robert Zolly, Ray McFadden, and Stephen Clayton filed a complaint for declaratory relief against the City, challenging the legality of those fees under the California Constitution, article XIII C (article XIII C).[1]

The City demurred, arguing the franchise fees were not subject to article XIII C, the Redesignated Fee challenge was time-barred, and the Redesignated Fee was properly imposed. The trial court granted the City's demurrer without leave to amend as to the franchise fees but with leave to

---

[1] Unspecified references to "article" are to the California Constitution.

amend as to future increases to the Redesignated Fee. Plaintiffs declined to amend, and judgment was entered. We affirm the judgment in part as to the Redesignated Fee and reverse in part as to the franchise fees.

## I. BACKGROUND

Because this appeal challenges a trial court order sustaining a demurrer, we draw the relevant facts from the complaint and matters subject to judicial notice.[2] (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924.)

### A. *Factual Background*

The City initiated a request for proposal procurement process for three franchise contracts regarding garbage, mixed materials and organics, and residential recycling services. The initial procurement process resulted in the City's Public Works Department (PWD) receiving contract proposals from only two firms, WMAC and CWS. PWD recommended the City award all three contracts to WMAC, stating the structure "provided the lowest overall rate option for Oakland residents."

Rather than accept PWD's recommendation, the City directed PWD to solicit new best and final bids from WMAC and CWS. PWD again recommended the City award all three contracts to WMAC. The City instead awarded all three contracts to CWS. Following a lawsuit by WMAC regarding the procurement process, WMAC and CWS reached a settlement in which WMAC would receive the garbage and mixed materials and organics contracts, and CWS would receive the residential recycling contract, subject

---

[2] On March 8, 2019, plaintiffs requested this court take judicial notice of an excerpt from the "2015–2016 Alameda County Grand Jury Final Report." We deny this request because the exhibit is unnecessary to resolve the issues raised in this appeal.

to the City's agreement. The City approved the settlement and amended the ordinance awarding the franchise contracts.

The City's ordinance approving the mixed materials and organics contract provided for an initial franchise fee of $25,034,000, with subsequent franchise fees " 'adjusted annually by the percentage change in the annual average of the Franchise Fee cost indicator.' " Similarly, the City's ordinance approving the residential recycling contract provided for an initial franchise fee of $3 million, with subsequent franchise fees " 'adjusted annually by the percentage change in the annual average of the Franchise Fee cost indicator.' "

Thereafter, the City passed an ordinance reducing WMAC's franchise fee by $3.24 million and designated that amount as the Redesignated Fee to compensate the City for the cost of "preparing, adopting, and implementing the Alameda County Integrated Waste Management Plan." The ordinance imposing the Redesignated Fee provides for a possible annual adjustment to reflect the impacts of inflation if certain criteria are met. In the event the Redesignated Fee is invalidated or the City is unable to collect that amount, then WMAC's franchise fee is increased by the amount left uncollected.

Based on "citizen complaints," an Alameda County grand jury "undertook a comprehensive investigation related to the solicitation and award of [the City's] Zero Waste contracts." The grand jury found the franchise fees paid by haulers were disproportionately higher than the franchise fees paid to other Bay Area municipalities and special districts. That grand jury also found the City's procurement process was mishandled and subject to political considerations.

3

**B. *Procedural Background***

Plaintiffs filed an initial complaint, seeking declaratory and injunctive relief. The complaint alleged violations of article XIII D, section 6, subdivision (b)(1), (2), and (3). The complaint asserted both the rates charged for refuse, recycling, and disposal collection and the franchise fee were excessive, not representative of the actual service costs or otherwise supported by any legitimate cost justification, and amounted to an improperly imposed tax that should be subject to article XIII C.

The City filed a demurrer to the initial complaint. The demurrer alleged the complaint failed to state a cause of action, any claims regarding the Redesignated Fees were barred by the statute of limitations, and plaintiffs failed to exhaust their administrative remedies.

The trial court sustained the demurrer with leave to amend. The court concluded all three causes of action contained insufficient allegations "that the allegedly 'excessive and disproportional refuse, recycling and disposal collection charges . . . being imposed on Plaintiffs' multifamily dwelling ("MFD") properties' . . . are a 'fee or charge' as defined in article XIIID, section 6, or are being 'extended, imposed, or increased by any agency' within section 6, subdivision (b)." Specifically, the court emphasized the complaint does not allege the franchise fee or rates are " 'imposed by an agency'—i.e. by the City—as distinguished from being charged to ratepayers by the private entities who contracted with the City." The court also noted plaintiffs did not address the City's argument that the Redesignated Fee was untimely.

Plaintiffs subsequently filed a first amended complaint, again seeking declaratory relief and alleging violations of article XIII C and article XIII D, section 6, subdivision (b)(1), (2), and (3). The amended complaint asserted the City imposed an excessive franchise fee, failed to determine "how much

4

the franchise fees would need to be to solely offset the cost to the [City] of the waste haulers' operations," and passed those fees on to ratepayers to avoid the limitations of Proposition 218. The amended complaint contended the City imposed such increased rates "through the guise of negotiated contracts," fully knowing the franchisees would pass the charges on to ratepayers.

The City demurred to the amended complaint, arguing the franchise fees were beyond the purview of Proposition 218 and noting plaintiffs failed to cure the statute of limitations bar to the Redesignated Fee challenge.

The trial court again granted the City's demurrer with leave to amend. The court noted the Supreme Court's recent decision in *Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248 (*Jacks*), and stated in part, "To properly state a claim that a franchise fee violates Proposition 218, a party challenging the fee must establish that the fee bears no rational relationship to the value of the property interest conveyed by the city to the franchisee." The court noted the amended complaint "erroneously focuses on whether the franchise fee charged by [the City] exceeds the 'proportional cost of the service attributable' to each individual parcel, rather than . . . the 'value of the franchise' itself." The court also held, in accordance with its prior decision, plaintiffs' challenge to the Redesignated Fee was barred by the statute of limitations.

Plaintiffs filed a second amended complaint (SAC) for declaratory relief, alleging the franchise fee and Redesignated Fee violated article XIII C. Specifically, the SAC alleged "[n]either of the franchise fees bears a reasonable relationship to the value received from the government and they are not based on the value of the franchises conveyed . . . ." The SAC

5

challenged the validity of the Redesignated Fee, and further claimed the challenge was timely as to all future increases to the Redesignated Fee.

The City again demurred, restating its prior arguments and asserting *Jacks*, *supra*, 3 Cal.5th 248 is distinguishable from the current situation and does not apply. It further argued plaintiffs' challenge to any annual increases to the Redesignated Fee failed to state a claim and was time-barred.

The trial court sustained the demurrer with leave to amend as to the Redesignated Fee increases, but "only to the extent Plaintiffs can legitimately allege . . . that the [Redesignated Fee] in fact was increased as of July 1, 2016 or thereafter." The court denied leave to amend all other aspects of the SAC. Notably, the court concluded the lack of a direct pass-through of the franchise fees to the customers distinguished the franchise fee in *Jacks* from that charged by the City.

Plaintiffs declined to amend. The court subsequently entered judgment against plaintiffs and dismissed the matter with prejudice. Plaintiffs timely appealed.

## II. DISCUSSION

### A. *Standard of Review*

We independently review a trial court's order sustaining a demurrer. (*Brown v. Deutsche Bank National Trust Co.* (2016) 247 Cal.App.4th 275, 279.) "In doing so, this court's only task is to determine whether the complaint states a cause of action. [Citation.] We accept as true all well-pleaded allegations in the operative complaint, and we will reverse the trial court's order of dismissal if the factual allegations state a cause of action on any available legal theory. [Citation.] We treat defendants' demurrer as admitting all properly pleaded material facts, but not contentions,

6

deductions, or conclusions of fact or law." (*Ibid*.) " 'We also consider matters which may be judicially noticed.' [Citation.] . . . [and] give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

"[W]hen a demurrer is sustained with leave to amend, but the plaintiff elects not to amend, it is presumed on appeal that the complaint states the strongest case possible." (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 10.)

## A. *Article XIII C*

In *Citizens for Fair REU Rates v. City of Redding* (2018) 6 Cal.5th 1, the California Supreme Court summarized the scope and application of article XIII C: "California voters have, over the past four decades, adopted a series of initiatives designed to limit the authority of state and local governments to impose taxes without voter approval. (*Jacks*, [*supra*, 3 Cal.5th] at p. 257.) [¶] The first of these initiatives was Proposition 13, adopted in 1978. It added article XIII A to the state Constitution 'to assure effective real property tax relief by means of an "interlocking 'package' " ' of four provisions. (*Sinclair Paint Co. v. State Bd. of Equalization* (1997) 15 Cal.4th 866, 872 (*Sinclair Paint*).) The first provision capped the ad valorem real property tax rate at 1 percent (art. XIII A, § 1); the second limited annual increases in real property assessments to 2 percent (art. XIII A, § 2); the third required that any increase in statewide taxes be approved by two-thirds of both houses of the Legislature (art. XIII A, § 3); and the fourth required that any special tax imposed by a local government entity be approved by two-thirds of the qualified electors (art. XIII A, § 4). Thus, with its first two provisions, Proposition 13 limited local government authority to increase property taxes. Further, 'since any tax savings

7

resulting from the operation of [the first two provisions] could be withdrawn or depleted by additional or increased state or local levies of other than property taxes, sections 3 and 4 combine to place restrictions upon the imposition of such taxes.' (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 231.)

"In 1996, the voters adopted Proposition 218, known as the ' "Right to Vote on Taxes Act." ' (*Jacks, supra*, 3 Cal.5th at p. 259.) It added articles XIII C and XIII D to the state Constitution. Article XIII D, like the first two provisions of article XIII A, limits the authority of local governments to assess taxes and other charges on real property. (See [*City of*] *San Buenaventura* [*v. United Water Conservation Dist*. (2017)] 3 Cal.5th [1191,] 1203–1204.) Article XIII C buttresses article XIII D by limiting the other methods by which local governments can exact revenue using fees and taxes not based on real property value or ownership. As enacted, article XIII C provided that '[a]ll taxes imposed by any local government shall be deemed to be either general taxes or special taxes.' (Art. XIII C, § 2, subd. (a).) Local governments may not impose, increase, or extend: (1) any general tax, unless approved by a majority vote at a general election; or (2) any special tax, unless approved by a two-thirds vote. (Art. XIII C, § 2, subds. (b), (d).)

"Significantly, Proposition 218 did not define the term 'tax.' That definition was provided 14 years later, with the passage of Proposition 26 in November 2010. Proposition 26's findings stated that, despite the adoption of Propositions 13 and 218, 'California taxes have continued to escalate.' (Voter Information Guide, Gen. Elec. (Nov. 2, 2010) text of Proposition 26, § 1, subd. (c), p. 114.) The findings also took note of a 'recent phenomenon whereby the Legislature and local governments have disguised new taxes as "fees" in order to extract even more revenue from California taxpayers

8

without having to abide by [the] constitutional voting requirements.' (*Id.*, subd. (e), p. 114.)" (*Citizens for Fair REU Rates v. City of Redding*, *supra*, 6 Cal.5th at pp. 10–11.)

"To ensure the effectiveness of Propositions 13 and 218, Proposition 26 made two changes to article XIII C.  First, it specifically defined ' "tax," ' and did so broadly, to include 'any levy, charge, or exaction of any kind imposed by a local government.' (Art. XIII C, § 1, subd. (e).)  However, the new definition has seven exceptions.  A charge that satisfies an exception is, by definition, not a tax." (*Citizens for Fair REU Rates v. City of Redding*, *supra*, 6 Cal.5th at p.  11.)  As relevant here, one exception involves charges "imposed for entrance to or use of local government property . . . ." (Art. XIII C, § 1, subd. (e)(4).)

"Second, Proposition 26 requires the local government to prove 'by a preponderance of the evidence that . . . [an] exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity.' (Art. XIII C, § 1, subd. (e).)" (*Citizens for Fair REU Rates v. City of Redding*, *supra*, 6 Cal.5th at p. 11.)

**B.** *Whether the Franchise Fee is a Tax*

Plaintiffs contend whether the SAC alleged an adequate cause of action is governed by *Jacks*, *supra*, 3 Cal.5th 248.  Plaintiffs argue, pursuant to *Jacks*, a franchise fee is valid only if it is reasonably related to the value of the property interests transferred, and its validity is not impacted by whether it is directly or indirectly imposed on ratepayers.  Because the SAC asserts the City's franchise fee bears no reasonable relationship to the

9

franchises' values and was indirectly imposed by the City, plaintiffs contend they adequately alleged a valid cause of action.

### 1. *Whether Franchise Fees Are Subject to Article XIII C*

In *Jacks*, the City of Santa Barbara and Southern California Edison (SCE) entered into an agreement to include a charge on SCE's electricity bills equal to 1 percent of SCE's gross receipts from the sale of electricity within Santa Barbara, which SCE would then transfer to Santa Barbara (the surcharge). (*Jacks, supra,* 3 Cal.5th. at p. 254.) This charge, along with another 1 percent charge, constituted the fee SCE paid for the privilege of using city property to deliver electricity. (*Ibid.*) Utility consumers filed a class action challenging the surcharge as an illegal tax under Proposition 218. (*Jacks,* at p. 256.) The trial court held a franchise fee is not a tax under Proposition 218 and thus the surcharge was not subject to voter approval. (*Jacks,* at p. 256.) The Court of Appeal reversed, concluding the surcharge was a tax requiring voter approval under Proposition 218 because its " 'primary purpose is for the City to raise revenue from electricity users for general spending purposes.' " (*Jacks,* at p. 257.)

The California Supreme Court affirmed in part and reversed in part. (*Jacks, supra,* 3 Cal.5th at p. 274.) It explained "following the enactment of Proposition 13, the Legislature and courts viewed various fees as outside the scope of the initiative." (*Id.* at p. 260.) The court noted "[t]he commonality among these categories of charges [that are fees rather than taxes] is the relationship between the charge imposed and a benefit or cost related to the payor." (*Id.* at p. 261.) "However, if the charges exceed the reasonable cost of the activity on which they are based, the charges are levied for unrelated revenue purposes, and are therefore taxes." (*Ibid.*, citing *Sinclair Paint, supra,* 15 Cal.4th at pp. 874, 881.) The court noted such a relationship

10

"serves Proposition 13's purpose of limiting taxes." (*Jacks*, at p. 261.) The court further explained "[a]lthough *Sinclair Paint* . . . focused on restrictions imposed by Proposition 13, its analysis of the characteristics of fees that may be imposed without voter approval remains sound." (*Jacks*, at p. 261.)

In analyzing how franchise fees fit within this framework, the Supreme Court noted "[h]istorically, franchise fees have not been considered taxes," and neither Proposition 218 nor Proposition 26 evidence an intent to change that historical characterization. (*Jacks*, *supra*, 3 Cal.5th at pp. 262–263.) It explained, however, while "sums paid for the right to use a jurisdiction's rights-of-way are fees rather than taxes. . . . , to constitute compensation for the value received, the fees must reflect a reasonable estimate of the value of the franchise." (*Id.* at p. 267.) The Supreme Court further explained "fees imposed in exchange for a property interest must bear a reasonable relationship to the value received from the government. To the extent a franchise fee exceeds any reasonable value of the franchise, the excessive portion of the fee does not come within the rationale that justifies the imposition of fees without voter approval. Therefore, the excessive portion is a tax. If this were not the rule, franchise fees would become a vehicle for generating revenue independent of the purpose of the fees." (*Id.* at p. 269.) The court thus held "a franchise fee must be based on the value of the franchise conveyed in order to come within the rationale for its imposition without approval of the voters." (*Id.* at p. 270.)

The City argues *Jacks* is inapposite because the court adjudicated the surcharge—a fee placed directly on the customers' bills—rather than the other 1 percent fee encompassed in SCE's electricity rates. We disagree. The structure of the fee at issue—whether the surcharge in *Jacks* or the franchise fee in the instant matter—does not alter the key question: whether a charge

11

constitutes a legitimate fee or an unlawful tax.  Both *Jacks* and the present case raise this same question.  And *Jacks* thus guides our analysis.

While a true franchise fee is indisputably a nontax, *Jacks* instructs us to look beyond any label and determine whether such a fee "reflect[s] a reasonable estimate of the value of the franchise."  (*Jacks*, *supra*, 3 Cal.5th at p. 267.)  The Supreme Court did not limit this analysis to the surcharge, but rather addressed all "charges that constitute compensation for the use of government property."  (*Id.* at p. 254.)  The Supreme Court explained while compensation for use of government property is exempt from Proposition 218's requirements, imposed charges only constitute such compensation if there is "a reasonable relationship to the value of the property interest." (*Jacks*, at p. 254.)  Any imposed charge beyond such an amount constitutes a tax and requires voter approval.  (*Ibid.*)

The City next contends *Jacks* is inapposite because it analyzes franchise fees under Proposition 218 rather than under the later-adopted Proposition 26.  The City argues the status of the franchise fees instead are controlled by article XIII C, which expressly exempts franchise fees from the definition of taxes.

"The interpretation of constitutional or statutory provisions presents a legal question, which we decide de novo."  (*Wunderlich v. County of Santa Cruz* (2009) 178 Cal.App.4th 680, 694.)  "The aim of constitutional interpretation is to determine and effectuate the intent of those who enacted the constitutional provision at issue.  [Citations.]  When the constitutional provision was enacted by initiative, the intent of the voters is the paramount consideration.  [Citation.]  To determine the voters' intent, courts look first to the constitutional text, giving words their ordinary meanings.  [Citations.] But where a provision in the Constitution is ambiguous, a court ordinarily

12

must adopt that interpretation which carries out the intent and objective of the drafters of the provision and the people by whose vote it was enacted. [Citations.] New provisions of the Constitution must be considered with reference to the situation intended to be remedied or provided for." (*League of Women Voters of California v. McPherson* (2006) 145 Cal.App.4th 1469, 1481; see also *Persky v. Bushey* (2018) 21 Cal.App.5th 810, 819 ["If necessary, extrinsic evidence of the voters' intent may include the analysis by the Legislative Analyst and the ballot arguments for and against the initiative."].)

Section 1, subdivision (e) of article XIII C defines " 'tax' " as "any levy, charge, or exaction of any kind imposed by a local government, except for" seven exemptions. Relevant here is the fourth exemption, which applies to "A charge imposed for entrance to or use of local government property, or the purchase, rental, or lease of local government property." (Cal. Const., art. XIII C, § 1, subd. (e)(4).) The fourth exemption does not expressly state the charge for entrance to or use of local government property must be reasonable. This absence contrasts with the first three exemptions, which do explicitly include such a requirement. (See *id.*, § 1, subd. (e)(1) ["A charge imposed for a specific benefit conferred or privilege granted directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the local government of conferring the benefit or granting the privilege."]; *id.*, subd. (e)(2) ["A charge imposed for a specific government service or product provided directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the local government of providing the service or product."]; *id.*, subd. (e)(3) ["A charge imposed for the reasonable regulatory costs to a local government for issuing licenses and permits, performing investigations, inspections, and

13

audits, enforcing agricultural marketing orders, and the administrative enforcement and adjudication thereof."].) However, subdivision (e) also contains a broad statement regarding the government's burden of proof: "The local government bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." (Cal. Const., art. XIII C, § 1, subd. (e).) This provision requires that a charge be "no more than necessary to cover the reasonable costs of the governmental activity" in order to be exempt from the "tax" definition. (*Ibid.*) However, the subdivision is silent as to whether this requirement applies to all seven exemptions, or only to the first three exemptions that explicitly include a reasonableness requirement. On this question, we find the provision ambiguous and look to the intent and objective of the voters in enacting the provision to guide our interpretation.

The ballot materials uniformly indicate a desire to expand the definition of what constituted a "tax" for purposes of article XIII C. "One of the declared purposes of Proposition 26 was to halt evasions of Proposition 218." (*Brooktrails Township Community Services Dist. v. Board of Supervisors of Mendocino County* (2013) 218 Cal.App.4th 195, 203; *Schmeer v. County of Los Angeles* (2013) 213 Cal.App.4th 1310, 1322 [Proposition 26 "was an effort to close perceived loopholes in Propositions 13 and 218"].) The Findings and Declarations of Purpose for Proposition 26 state: "Since the enactment of Proposition 218 in 1996, the Constitution of the State of California has required that increases in local taxes be approved by the voters. [¶] . . . Despite these limitations, California taxes have continued to

14

escalate. Rates for . . . a myriad of state and local business taxes are at all-time highs. Californians are taxed at one of the highest levels of any state in the nation. [¶] . . . [¶] . . . This escalation in taxation does not account for the recent phenomenon whereby . . . local governments have disguised new taxes as 'fees' in order to extract even more revenue from California taxpayers without having to abide by these constitutional voting requirements. . . . [¶] . . . In order to ensure the effectiveness of these constitutional limitations, this measure . . . defines a 'tax' for state and local purposes so that neither the Legislature nor local governments can circumvent these restrictions on increasing taxes by simply defining new or expanded taxes as 'fees.' " (Voter Info. Guide, Gen. Elec. (Nov. 2, 2010) text of Prop. 26, § 1, subds. (b), (c), (e), (f), p. 114.)

Likewise, the analysis by the Legislative Analyst explained Proposition 26 "expands the definition of a tax and a tax increase so that more proposals would require approval by two-thirds of the Legislature or by local voters." (Voter Info. Guide, Gen. Elec. (Nov. 2, 2010) analysis of Prop. 26 by the Legislative Analyst, p. 57.) It further states: "This measure broadens the definition of a state or local tax to include many payments currently considered to be fees or charges," while noting other fees and charges "Are Not Affected." (*Id.* at p. 58.) Nowhere does the analysis identify any narrowing of the definition of a state or local tax.

Here, the intent and objective of the voters in passing Proposition 26 is clear. The purpose was to expand the definition of "tax" to require more types of fees and charges be approved by two-thirds of the Legislature or by local voters. Proposition 26's Findings and Declarations of Purpose expressly note it was passed in response to "the recent phenomenon whereby the Legislature and local governments have disguised new taxes as 'fees' in order

15

to extract even more revenue from California taxpayers without having to abide by these constitutional voting requirements." (Voter Info. Guide, Gen. Elec. (Nov. 2, 2010) text of Prop. 26, § 1, subd. (e), p. 114.) As noted by the California Supreme Court, the purpose of Proposition 26 "was to *reinforce* the voter approval requirements set forth in Propositions 13 and 218." (*Jacks*, *supra*, 3 Cal.5th at pp. 262–263.)

In light of this extensive evidence regarding the voters' intent in passing Proposition 26, we conclude a franchise fee, arguably subject to the fourth exemption in article XIII C, section 1, subdivision (e), must still be reasonably related to the value of the franchise. (*Jacks*, *supra*, 3 Cal.5th at p. 267.) Only that portion with a reasonable relationship may be exempt from the "tax" definition. (See *City of San Buenaventura v. United Water Conservation Dist.*, *supra*, 3 Cal.5th at p. 1214 ["it is clear from the text [of Proposition 26] itself that voters intended to adopt two separate requirements: To qualify as a nontax 'fee' under article XIII C, as amended, a charge *must satisfy both the requirement that it be fixed in an amount that is 'no more than necessary to cover the reasonable costs of the governmental activity*,' and the requirement that 'the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity.' " (italics added, italics omitted)].)

Finally, the City contends the franchise fee does not qualify as a "tax" under article XIII C because it was not " 'imposed by local government.' " Specifically, the City asserts the franchise fee constitutes contract consideration and is not imposed merely because it is passed on to ratepayers. However, if we accept the City's reasoning, any local government could avoid running afoul of article XIII C by merely contracting with a third

16

party to impose the desired tax on residents rather than enacting it directly. This result would directly conflict with the purpose of Propositions 218 and 26. (See *Howard Jarvis Taxpayers Assn. v. City of San Diego* (2004) 120 Cal.App.4th 374, 394 [purpose of Prop. 218 is to " 'protect[ ] taxpayers by limiting the methods by which local governments exact revenue from taxpayers without their consent' "]; *Citizens for Fair REU Rates v. City of Redding*, *supra*, 6 Cal.5th at p. 11 [Prop. 26 adopted "To ensure the effectiveness of Propositions 13 and 218"].) Moreover, the California Supreme Court implicitly rejected this argument in *Jacks*. There, the charge at issue was established "[p]ursuant to an agreement between [SCE] and defendant City of Santa Barbara." (*Jacks*, *supra*, 3 Cal.5th at p. 254.) Nonetheless, its contractual formation did not automatically exempt the charge from being defined as a "tax." Rather, the court held "fees imposed in exchange for a property interest must bear a reasonable relationship to the value received from the government. To the extent a franchise fee exceeds any reasonable value of the franchise, . . . . the excessive portion is a tax." (*Id.* at p. 269.)

Neither of the two cases cited by the City, *County of Tulare v. City of Dinuba* (1922) 188 Cal. 664 and *Citizens Assn. of Sunset Beach v. Orange County Local Agency Formation Com.* (2012) 209 Cal.App.4th 1182, alter our analysis. In *County of Tulare*, the court addressed in part whether a subsequent constitutional amendment could void a preexisting statutory charge imposed on franchises. (*County of Tulare*, at p. 667.) While the court noted the fee was "not imposed by law but by his acceptance of the franchise," it did not conclude the fee was not "imposed" under article XIII C but merely that it was "imposed . . . by his acceptance of the franchise." (*County of Tulare*, at p. 670.) Likewise, *Citizens Association of Sunset Beach*, involved

17

the extension of preexisting taxes, rather than a creation of new taxes. (*Citizens Assn. of Sunset Beach*, at pp. 1185–1186.) In assessing whether the preexisting taxes had to be approved by a two-thirds vote under Proposition 218, the court noted "[t]he word 'impose' usually refers to the first enactment of a tax, as distinct from an extension through operation of a process such as annexation." (*Citizens Assn. of Sunset Beach*, at p. 1194; accord *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 944 ["impose" construed as synonymous to enacted, created, or established].) In the present matter, however, no one asserts the franchise fee is not "the first enactment" of the charge.

## 2. *Whether the SAC Adequately Alleged a Cause of Action*

As we conclude in the prior section, a franchise fee may constitute a tax subject to article XIII C to the extent it is not reasonably related to the value received from the government. The SAC adequately raises such allegations. First, the SAC recounts the manner in which the contracts were awarded and notes the ordinance approving the final contracts provided for the following franchise fees: (1) an initial franchise fee of $25,034,000 for the mixed materials and organics contract, with subsequent franchise fees " 'adjusted annually by the percentage change in the annual average of the Franchise Fee cost indicator' "; (2) an initial franchise fee of $3 million for the residential recycling services contract, with subsequent franchise fees " 'adjusted annually by the percentage change in the annual average of the Franchise Fee cost indicator.' " Next, the SAC asserts these contracts "were not the product of bona fide negotiations" and, as a result, various financial analyses were not performed. The SAC further states the City "did not complete a value analysis of the government property interests conveyed." As a result, alleges the SAC, a grand jury found these franchise fees "are

18

disproportionately higher than franchise fees paid to other Bay Area municipalities and special districts," and the City's procurement process was mishandled and subject to political considerations. The SAC supports these allegations by noting the plaintiffs' rate increases ranged from 79.76 percent to 155.37 percent. The SAC also states no evidence was presented to the grand jury that the City analyzed service or disposal costs. The SAC thus claims the franchise fees do not "bear[ ] a reasonable relationship to the value received from the government," "are not based on the value of the franchises conveyed," and were set based on the prior franchise fee "without any analysis or determination of the value of the prior franchise." These allegations sufficiently state a claim under the standard set forth in *Jacks*.

## C. *Redesignated Fee*

The City passed an ordinance creating the Redesignated Fee, pursuant to Public Resources Code section 41901, to redesignate part of WMAC's franchise fee as a fee to compensate the City for the cost of "preparing, adopting, and implementing the Alameda County Integrated Waste Management Plan." While plaintiffs are not challenging the initial creation of the Redesignated Fee, the ordinance also provided for possible annual increases to the Redesignated Fee. Plaintiffs contend the SAC adequately sought declaratory relief as to the validity of those future Redesignated Fee increases. While the SAC does not contend any Redesignated Fee increases have occurred and plaintiffs acknowledge such increases are not guaranteed to happen every year, plaintiffs contend declaratory relief is appropriate because the parties have an actual controversy about the validity of the "automatic" Redesignated Fee increases.

"The 'actual controversy' language in Code of Civil Procedure section 1060 encompasses a probable future controversy relating to the legal rights

19

and duties of the parties. [Citation.] For a probable future controversy to constitute an 'actual controversy,' however, the probable future controversy must be ripe. [Citation.] A 'controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' " (*Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 885.) "It does not embrace controversies that are 'conjectural, anticipated to occur in the future, or an attempt to obtain an advisory opinion from the court.' " (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1582.) " ' "Whether a claim presents an 'actual controversy' within the meaning of Code of Civil Procedure section 1060 is a question of law that we review de novo." ' " (*Ibid.*)

"A ripeness inquiry involves a two-step analysis: First, whether the issue is appropriate for immediate judicial resolution; and second, whether the complaining party will suffer a hardship from a refusal to entertain its legal challenge. [Citation.] [¶] Under the first test, ' "courts will decline to adjudicate a dispute if 'the abstract posture of the proceeding makes it difficult to evaluate . . . the issues' [citation], if the court is asked to speculate on the resolution of hypothetical situations [citation], or if the case presents a 'contrived inquiry' [citation]." [Citation.]' [Citation.] [¶] Under the second test, courts generally will not consider issues based on speculative future harm. [Citation.] This is particularly true where the complaining party will have the opportunity to pursue appropriate legal remedies should the anticipated harm ever materialize." (*Metropolitan Water Dist. of Southern California v. Winograd* (2018) 24 Cal.App.5th 881, 892–893.)

Here, the record indicates plaintiffs' challenge to future Redesignated Fee increases does not present an actual controversy proper for adjudication.

Any future Redesignated Fee increase is based on the percentage change in the annual "Consumer Price Index—All Urban Consumers, Series ID cuura422sa0, Not Seasonally adjusted, San Francisco-Oakland-San Jose." That potential increase, however, is not implemented for any particular year if WMAC's gross receipts for the prior calendar year were less than the calendar year before that. Thus, while the ordinance imposing the Redesignated Fee provides for fee increases, it is uncertain whether or when those will occur and, if they do, the actual amount of such an increase. Nor do plaintiffs explain how the court could assess whether those future unknown increases exceed the City's future costs for "preparing, adopting, and implementing the plan, as well as in setting and collecting the local fees." (See Pub. Resource Code, § 41901.)

Plaintiffs contend if the current Redesignated Fee exceeds the City's current costs, as alleged in the complaint, then any future Redesignated Fee increase would also exceed the City's costs. But this presumes the City's costs remain static, and the SAC contains no such allegations. Rather, it is reasonable to assume the City's costs may increase by the time of any Redesignated Fee increase. The degree of any such cost increase, however, is unknown, and the SAC is entirely silent regarding this issue.

Nor are plaintiffs' arguments regarding hardship persuasive. Plaintiffs contend they incur such hardship because they are currently paying a Redesignated Fee that exceeds the amount allowable by law. But the trial court concluded plaintiffs' challenge to the current Redesignated Fee was time-barred, and plaintiffs have not challenged that ruling on appeal. Instead, plaintiffs only contend the SAC "adequately alleges a claim for declaratory relief as to the automatic increases." Accordingly, any harm plaintiffs currently are incurring is based on their own failure to timely

21

challenge the Redesignated Fee.  As discussed above, what, if any, harm plaintiffs may incur from future fee increases is uncertain at this time, and plaintiffs have not demonstrated they will be unable "to pursue appropriate legal remedies should the anticipated harm ever materialize."[3]  (*Metropolitan Water Dist. of Southern California v. Winograd*, *supra*, 24 Cal.App.5th at p. 893.)  Accordingly, plaintiffs' challenge to future Redesignated Fee increases is not ripe for adjudication.

## III.  DISPOSITION

The trial court's judgment is affirmed in part and reversed in part.  We affirm the court's order sustaining the City's demurrer as to the Redesignated Fee increase.  However, we reverse the trial court's order sustaining the City's demurrer as to the validity of the franchise fee.  The parties shall bear their own costs on appeal.  (See Cal. Rules of Court, rule 8.278(a)(5).)

---

[3] The trial court rejected the City's argument that plaintiffs' challenge to the future Redesignated Fee increases are also time-barred, and the City did not contest that ruling.  We do not independently opine on that holding or whether other legal arguments may bar such a claim in the future as neither party has raised such arguments in this appeal.

_____
Margulies, J.

We concur:

_____
Humes, P. J.

_____
Banke, J.

A154986
*Zolly v. City of Oakland*

23

Trial Court: Superior Court of Alameda County

Trial Judge:        Hon. Paul D. Herbert

Counsel:

Zacks, Freedman & Patterson and Andrew M. Zacks; Katz Appellate Law and Paul J. Katz for Plaintiffs and Appellants.

Barbara Parker, Doryanna Moreno, Maria Bee, David Pereda and Celso Ortiz, City Attorney; Chao ADR, PC and Cedric C. Chao; DLA Piper LLP, Tamara Shepard and Mauricio Gonzalez, for Defendant and Respondent.